# EXHIBIT C



**LAWYERS' COMMITTEE FOR**
**CIVIL RIGHTS**
**U N D E R   L A W**

Via Email and Facsimile

November 2, 2016

Douglas A. Kellner, Co-Chair
Peter S. Kosinski, Co-Chair
Gregory P. Peterson, Commissioner
Andrew J. Spano, Commissioner
Robert A. Brehm, Co-Executive Director
Todd D. Valentine, Co-Executive Director
New York State Board of Elections
40 North Pearl Street, Suite 5
Albany, NY 12207-2729
Email: INFO@elections.ny.gov
Fax:    (518) 473-8315

Re: Non-compliance with Section 8 of the National Voter Registration Act of 1993

Dear Commissioners and Co-Executive Directors of the New York State Board of Elections:

We write on behalf of Common Cause NY, their respective members and affiliates, eligible New Yorkers whom they have assisted with attempting to vote, and others similarly situated, to notify you that the procedures for processing inactive voters at polling places, as applied by your office and election officials, violate Section 8 of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20507.

Under New York law, the board of elections sends a confirmation notice if mail sent to a voter is returned as undeliverable by the postal service without any indication of a forwarding address, or if the postal service receives notice a voter has moved without leaving a forwarding address. N.Y. ELEC. LAW § 5-712(1). A voter becomes "inactive" after the local board of elections sends that notice to the voter. N.Y. ELEC. LAW § 5-213(1). The notice asks that voters reply with their current addresses and warns that if they do not respond (1) they may be required to vote by affidavit ballot, and (2) their registrations may be cancelled if they do not vote within two federal election cycles. N.Y. ELEC. LAW § 5-712(3).

New York law requires that when voters are placed into inactive status, "[t]he registration poll records of all such voters shall be removed from the poll ledgers and maintained at the offices of the board of elections in a file." N.Y. ELEC. LAW § 5-213(2). While inactive voters remain part of that file and are eligible to vote, they are not included in the poll book available at polling places. 9 C.R.R.-N.Y. § 6217.9(2). Inactive voters may be restored to active status only after doing one of the following: (1) providing notice that he or she resides at the listed address; (2) signing a designating or nominating petition that includes the listed address; (3) casting a ballot in an affidavit envelope which states that he or she resides at the listed address; (4) voting in a local election, such as one held by a town or school district; or (5) obtaining a court order, presenting the order at a polling place, and casting a regular ballot. N.Y. ELEC. LAW §§ 5-213(3), 8-302(e)(i). Inactive voters are eligible to vote and are therefore distinct form purged voters, who are ineligible. 9 C.R.R.-N.Y. § 6217.9.

1

New York and Mississippi are the only states that do not include inactive voters in poll books at polling places while also not providing for either in-person early voting at a centralized location or a fail-safe registration mechanism. The vast majority of states make inactive voters' names available at polling places, while using a unique designation indicating inactive status or employing different procedures for processing these individuals. *See, e.g.*, CONN. GEN. STAT. ANN. §§ 9-35, 9-42; TEX. ELEC. CODE ANN. § 15.112; ALA. CODE §§ 17-4-9, 17-4-30.

We have conducted an investigation that included reviewing poll worker manuals from jurisdictions around the state, as well as speaking with poll workers and inactive voters who attempted to vote in New York. Poll workers are generally trained that, absent a court order, voters who do not appear on the poll ledger at the polling place should be given the option of completing an affidavit ballot. There is no mechanism at polling places for determining whether a potential voter does not appear on the rolls because they are inactive or simply not registered to vote. Poll workers are not trained or informed that inactive voters are eligible to vote in New York elections or that the board of elections maintains a list of those voters.

Inactive voters are therefore rarely, if ever, informed that their affidavit ballot will be counted or that casting an affidavit ballot automatically restores them to active status. Predictably, this had the effect of confusing and frustrating inactive New York voters who called the Election Protection Hotline on the day of the April 2016 presidential primary election. Those callers are only a small sample of the many similarly situated New Yorkers who have left polling places uncertain of whether their vote counted or, worse, did not attempt to cast an affidavit ballot because they did not believe it would count. New York's statutory framework also increases the risk that a poll worker tells an inactive voter that they are not eligible and turns them away.

Systemic barriers working in tandem – in particular the combined absence of (1) in-person early voting at centralized locations; (2) a fail-safe registration mechanism, (3) electronic poll books containing access to inactive voter information, and (4) a policy that requires poll workers to contact county election officials when a voter is not listed in the paper poll book – result in the disenfranchisement of inactive New York voters. As a practical matter, the only registration list accessible to inactive voters attempting to vote are the paper poll books available at polling places on Election Day. Inactive voters are generally treated the same as voters who never registered at all, and are required to cast an affidavit ballot without knowing whether or not it will count. In short, New Yorkers on the inactive list lack meaningful access to the computerized list of voters maintained at local boards of elections offices when they attempt to vote.

These procedures do not occur in a vacuum and can exacerbate other problems in the election administration apparatus. For example, the New York City Board of Elections confirmed that more than 126,000 Brooklyn voters were removed from the rolls between the summer of 2015 and the April 2016 presidential primary election. Media reports indicate that this included 44,000 people who were inappropriately moved from active to inactive status, and 70,000 people who were taken off the list entirely after previously having been inactive. Michael D. Regan, *Officials Investigating Why 126,000 Voters Were Purged from NY Rolls*, PBS NEWSHOUR, Apr. 23, 2016, *available at* http://www.pbs.org/newshour/rundown/officials-investigating-why-126000-voters-were-purged-from-ny-rolls/. We note that an investigation of the April 2016 presidential primary by the New York Attorney General's office remains ongoing. Letter from Lourdes M. Rosado, Bureau Chief, Office of the N.Y. Att'y Gen., to the Com'rs of the New York State Election Board, Oct. 17, 2016, *available at* https://ag.ny.gov/sites/default/files/2016_10_17_letter_to_state_boe.pdf.

Section 8 of the NVRA enumerates the exclusive list of reasons why voters may be removed from a registration list for a federal election. In particular, Section 8(a)(3) provides that "the name of a registrant may not be removed from the official list of eligible voters" unless (1) the registrant has died; (2) pursuant to state laws disenfranchising those mentally incapacitated or convicted of certain crimes; (3) at the request of the registrant; or (4) the registrant has moved and certain procedures are followed. 52 U.S.C. § 20507(a)(3). Additionally, Section 8(b)(1) requires that all list maintenance programs employed with respect to voter registration lists used in federal elections must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1).

The procedures employed in New York during the 2016 election cycle, as applied to voters assisted by Common Cause NY and similarly situated individuals, constitute effective removal from the voter registration rolls. Eligible registered voters placed on inactive status in New York were removed from the list of eligible voters within the meaning of Section 8 of the NVRA because, as a result of several factors in combination with the prohibition on including inactive voters' names in poll books, it was virtually impossible for them to ascertain their eligibility to vote on Election Day. These circumstances constitute de facto removal under the NVRA. *See* Stipulation of Facts and Consent Order, *United States v. Bd. of Elec. Com'rs for the City of St. Louis*, C.A. No. 4:02-CV-1235-CEJ (E.D. Mo. Aug. 14, 2002). Moreover, these burdens are borne more heavily by minority voters in New York because they are disproportionately placed on inactive status.

Please be advised that this letter serves as written notice pursuant to 52 U.S.C. § 20510(b). Please also note that these violations of Section 8(a)(3) and 8(b)(1) of the NVRA are current and ongoing. We are, of course, hoping that an amicable resolution can be reached swiftly. Please contact the undersigned to discuss this matter further.

Sincerely,

Kristen Clarke
President and Executive Director
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue NW, Suite 400
Washington, DC 20005

Susan Lerner
Executive Director
Common Cause NY
80 Broad Street, Suite 2703
New York, NY 10004