UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

**COMMON CAUSE NEW YORK, as an** :
**organization and on behalf of its members**,
:

             Plaintiff, :

    -against- :

**ROBERT A. BREHM**, Co-Executive Director,   Case No.  1:17-cv-06770-AJN
**TODD D. VALENTINE**, Co-Executive
Director, **PETER S. KOSINSKI,** Co-Chair, :
**DOUGLAS A. KELLNER,** Co-Chair,
**ANDREW J. SPANO,** Commissioner, and
**GREGORY P. PETERSON**, Commissioner,
in their official capacities as Commissioners of
the **NEW YORK STATE BOARD OF**
**ELECTIONS**,

            Defendants.

-------------------------------------- X

## PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

ARGUMENT ................................................................................. 2

I.    THE COMPLAINT STATES A CLAIM UNDER SECTION 8 OF THE
      NVRA ............................................................................. 3

      A.    New York Election Law Is Facially Invalid Under Section 8 of the
            NVRA ....................................................................... 3

      B.    The New York Election Law, As Applied, Violates Section 8 of the
            NVRA ....................................................................... 6

            1.    Courts recognize de facto removal claims ............................. 6

            2.    The Complaint alleges facts sufficient to show de facto removal .......... 8

      C.    Defendants' Interpretation of Section 8 Conflicts with the Statutory
            Purpose and Legislative History of the NVRA ................................ 9

            1.    The Court should interpret the "official list of eligible voters" in a
                  manner that "enhances the participation of eligible citizens as
                  voters" ............................................................ 10

            2.    De facto removal claims are consistent with the legislative history
                  and purpose of the NVRA ............................................ 12

            3.    Requiring "inactive" voters to vote by provisional ballot instead of
                  by regular ballot disenfranchises such voters ........................ 13

II.   PLAINTIFF HAS ARTICLE III STANDING ...................................... 14

      A.    Plaintiff Has Alleged Facts Sufficient to Establish Organizational
            Standing .................................................................. 15

      B.    Plaintiff Has Alleged Facts Sufficient to Establish Associational
            Standing .................................................................. 17

            1.    Plaintiff does not need to name specific members in order to
                  sufficiently allege associational standing ............................. 18

            2.    Some of Plaintiff's members would have standing to sue in their
                  own right because they have suffered an injury-in-fact .................. 20

      CONCLUSION ...................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

CASES

*Abramski v. United States,*
    134 S. Ct. 2259 (2014) ................................................................3, 11

*Arcia v. Florida Sec'y of State,*
    772 F.3d 1335 (11th Cir. 2014) ...............................................16

*Ashcroft v. Iqbal,*
    556 U.S. 662  S.Ct. 1937 (2009) ...............................................2

*Bldg. & Const. Trades Council of Buffalo, New York & Vicinity* v. *Downtown*
    *Dev., Inc.,*
    448 F.3d 138 (2d Cir. 2006)...............................................18, 20

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay,*
    868 F.3d 104 (2d Cir. 2017)...............................................16

*Common Cause of Colorado v. Buescher,*
    750 F. Supp. 2d 1259 (D. Colo. 2010) ................................3, 5

*Common Cause/Georgia v. Billups,*
    554 F.3d 1340 (11th Cir. 2009) ...............................................16

*Elliott Assocs., L.P. v. Banco de la Nacion,*
    194 F.3d 363 (2d Cir. 1999).......................................................3

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*
    528 U.S. 167 (2000)...............................................................15

*Georgia State Conference of N.A.A.C.P. v. Kemp,*
    841 F. Supp. 2d 1320 (N.D. Ga. 2012) ................................10

*Greater Birmingham Ministries v. Merrill,*
    250 F. Supp. 3d 1238 (N.D. Ala. 2017)................................16

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)...............................................................15

*Hunt v. Washington State Apple Advertising Comm'.*
    432 U.S. 333 (1977)...............................................................17

*In re NYSE Specialists Securities Litigation,*
    503 F.3d 89 (2d Cir.2007)...........................................................2

*Irrera v. Humphreys,*
   859 F.3d 196 (2d Cir. 2017)...................................................................................9

*King v. Burwell,*
   135 S. Ct. 2480 (2015)...........................................................................................3

*Log On America, Inc. v. Promethean Asset Mgmt., L.L.C.,*
   223 F. Supp. 2d 435 (S.D.N.Y. 2001).....................................................................3

*Lopez Torres v. New York State Bd. Of Elections,*
   462 F.3d 161 (2d Cir. 2008), *rev'd on other grounds*, 552 U.S. 196 (2008)....................18, 20

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)..........................................................................................15, 19

*Mid-Hudson Catskill Rural Migrant Ministry, Incorporated v. Fine Host*
   *Corporation,*
   418 F.3d 168 (2d Cir. 2005)................................................................................16

*National Council of La Raza v. Cegavske*
   800 F.3d 1032 (9th Cir. 2015) .............................................................................18

*N.Y. Civil Liberties Union v. NYC Transit Auth.,*
   684 F.3d 286 (2d Cir. 2011)................................................................................17

*New York State Dept. of Social Servs. v. Dublino,*
   413 U.S. 405 (1973).............................................................................................3

*Nnebe v. Daus,*
   644 F.3d 147 (2d Cir. 2011)................................................................................15

*North Carolina State Conf. of the NAACP v. McCrory,*
   831 F.3d 204 (4th Cir. 2016) ..............................................................................14

*North Carolina State Conf. of the NAACP v. North Carolina State Bd. of Elecs.,*
   No. 1:16-CV-1274, 2016 WL 6581284 (M.D.N.C. Nov. 4, 2016) .................................10, 14

*Sandusky County Democratic Party v. Blackwell,*
   387 F.3d 565 (6th Cir. 2004) ..............................................................................18

*Sandusky Cty. Democratic Party v. Blackwell,*
   340 F. Supp. 2d 815 (N.D. Ohio 2004)..................................................................4

*Small v. Gen. Nutrition Cos., Inc.,*
   388 F. Supp. 2d 83 (E.D.N.Y. 2005) ....................................................................20

*Summers v. Earth Island Institute*
   555 U.S. 488 (2009)...........................................................................................18

*Thompson v. C'nty of Franklin*,
    15 F.3d 245 (2d Cir. 1994)................................................................................15

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014)............................................................4, 5

*U.S. Students Ass'n Foundation v. Land*,
    546 F.3d. 373 (6th Cir. 2008) ..............................................................10, 11, 12

*United States v. Bd. of Elec. Com'rs for the City of St. Louis*,
    No. 4:02-CV-1235-CEJ (E.D. Mo. Aug. 14, 2002)........................................6, 7

*United States v. Cibola County*,
    No. 1:93-cv-01134-LH-LFG, Dkt. 91 (D.N.M. Mar. 19, 2007)......................6, 7

*United States v. Louisiana*,
    196 F. Supp. 3d 612 (M.D. La. 2016), *vacated on other grounds*, No. 3:11-
    CV-470-JWD-RLB, 2017 WL 4118968 (M.D. La. Aug. 21, 2017)....................9

*Veasey v. Abbott*,
    830 F.3d 216 (5th Cir. 2016) (en banc) .........................................................14

*Veasey v. Perry*,
    29 F. Supp. 3d 896 (S.D. Tex. 2014) .............................................................16

**STATUTES**

52 U.S.C. § 20501...................................................................................3, 9, 10

52 U.S.C. § 20507.......................................................................................5, 6

52 U.S.C. § 21082.....................................................................................4, 13

Federal Rule of Civil Procedure 12(b)(1) ...........................................................15

Federal Rule of Civil Procedure 12(b)(6) .............................................................2

Help America Vote Act of 2002 .................................................................4, 13

National Voter Registration Act, 52 U.S.C. § 20501, *et seq.*. ......................1, 7

N.Y. Elec. Law § 8-202 ...............................................................................10

N.Y. Elec. Law § 8-302 ...............................................................................10

N.Y. Elec. Law § 8-304 ...............................................................................10

**OTHER AUTHORITIES**

148 Cong. Rec. S10488-02 ........................................................................................................14

H.R. REP. 103-9, 16 ..........................................................................................................12, 13

S. REP. 103-6, 33...................................................................................................................12

Plaintiff Common Cause/New York ("Plaintiff") respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss by defendants the Co-Executive Directors and Commissioners of the New York State Board of Elections (collectively, "Defendants").  Since Plaintiff has standing and the relevant New York Election Law, both on its face and as applied, violates Section 8 of the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.*, ("NVRA"), Defendants' motion to dismiss should be denied.

## PRELIMINARY STATEMENT

This action seeks to enjoin Defendants' ongoing violations of Section 8 of the NVRA ("Section 8") through their use of a voter list maintenance procedure that removes registered voters from the voting rolls based on the mere belief that a voter has moved.  Under this scheme, boards of elections send out address confirmations to large batches of voters, who are immediately placed on an "inactive" list and simultaneously removed from poll books available at voting precincts on Election Day.  Defendants move to dismiss Plaintiff's Complaint on three grounds: (1) New York Election Law facially complies with Section 8; (2) de facto removal is not a legally cognizable claim under the NVRA, and the Complaint does not state facts to establish a plausible claim for de facto removal; and (3) Plaintiff lacks standing.  None of these arguments has merit.

New York Election Law violates Section 8 on its face and as applied.  The voter maintenance scheme improperly places voters in "inactive" status and immediately removes the names of "inactive" voters from the official poll books that are used to determine eligibility and must be signed to obtain a regular ballot on Election Day.  Thus, "inactive" voters – who are typically turned away by poll workers as ineligible – at best must cast affidavit ballots.  Defendants' semantic argument – that the "official list" of eligible voters is the NYSVoter

database, which itself contains both the "active" voters that appear on the poll books as well as "inactive" voters who do not appear on the poll books – would effectively eviscerate the protections afforded by Section 8.

Moreover, even if removal from poll books alone is not unlawful because the voter still appears in the NYSVoter database – which is not permitted to be used or consulted by poll workers on Election Day – removing a registrant's name from the official poll book, in combination with other factors, constitutes a de facto removal under Section 8. Keeping eligible voters out of the poll books has resulted in the disenfranchisement of thousands of "inactive" voters. If enforcement of the relevant New York Election Law is not enjoined, "inactive" voters will continue to be resigned to an inferior status and disenfranchised in future elections.

Finally, Plaintiff has alleged facts demonstrating that it has both organizational standing and associational standing. Not only has Plaintiff diverted resources from its voter registration efforts in order to focus on voter complaints as a result of Defendants' actions, but Defendants' actions have also frustrated Plaintiff's mission as an organization; and some of its members have been or will be improperly placed on "inactive" status and removed from the poll books.

## ARGUMENT

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept as true the factual allegations made by plaintiff and "draw all inferences in the light most favorable" to plaintiff. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). "The movant's burden is very substantial, as '[t]he issue is not whether a

plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" *Log On Am., Inc. v. Promethean Asset Mgmt., L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001).  When measured against this standard, Plaintiff's Complaint clearly states a claim for relief under the NVRA.  Defendant's motion to dismiss should therefore be denied.

## I.   THE COMPLAINT STATES A CLAIM UNDER SECTION 8 OF THE NVRA

### A.   New York Election Law Is Facially Invalid Under Section 8 of the NVRA

Defendants argue that the removal of "inactive" voters from poll books does not violate the NVRA because poll books are not the "'official list(s)' of voters in New York." Dkt. 37 ("Defs.' Mot."), at 8.  That argument is not supported by the statutory language of the NVRA. Rather, the statutory context, structure, history, and purpose of the NVRA all make clear that the poll books used by poll workers on Election Day constitute an "official list of eligible voters" under the NVRA.  Among the purposes of the NVRA is to implement the Act "in a manner that enhances the participation of eligible citizens as voters" in federal elections.  52 U.S.C. § 20501(b)(2).  Defendants' constrained definition of "official lists" is at odds with this purpose. *See Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014); *Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 371 (2d Cir. 1999) (noting the Court must "focus upon the broader context and primary purpose of the statute") (internal quotation marks omitted).  Courts "cannot interpret federal statutes to negate their own stated purposes." *New York State Dept. of Social Servs. v. Dublino*, 413 U.S. 405, 419-20 (1973); *see also King v. Burwell*, 135 S. Ct. 2480, 2489, 2492-93 (2015) (rejecting interpretation that would "destabilize the individual insurance market" and "likely create the very 'death spirals' that Congress designed the [Affordable Care] Act to avoid," noting that the court's duty is "to construe statutes, not isolated provisions.").  Case precedent and congressional action both support Plaintiffs' construction of the statute.

Plaintiffs are aware of only one court that has addressed whether poll books are an "official list of eligible voters," and it has ruled that they are. *Common Cause of Colorado v. Buescher*, 750 F. Supp. 2d 1259, 1265 (D. Colo. 2010) ("The 'poll book,' then, which is made up of electors in … 'active' or 'inactive' registration status, constitutes the 'official list of eligible voters' for each county in any given election."). Similarly, Section 302 of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21082(a), lends additional support for the proposition that poll books are a subset of the "official list of eligible voters" and must contain all official voters for that polling place. Section 302 of HAVA, which pertains to provisional voting, refers to the official list of eligible voters as being specific to the polling place. *Id.* ("If an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the *official list of eligible voters for the polling place* or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows…" (emphasis added)); *see also Sandusky Cty. Democratic Party v. Blackwell*, 340 F. Supp. 2d 815, 818-19 (N.D. Ohio 2004) (noting that Ohio calls its "Roster" of voters available in polling place the "official list of eligible voters").[1]

Defendants nevertheless argue that New York's poll books are different because New York is one of only two states (along with Mississippi) that does not list "inactive" voters in poll books at polling places and also does not provide for either in-person early voting at a centralized

---

[1] Indeed, if Defendants' argument that "inactive" voters are still on the "official list" of eligible voters because their names appear in the NYSVoter database was correct, such "inactive" voters would be ineligible to receive a provisional ballot because ballots can only be given only to an individual who declares that he/she is registered to vote in the jurisdiction but whose name *does not* appear on the "official list." 52 U.S.C. § 21082.

location or a fail-safe registration mechanism.[2]  Defs.' Mot. at 8 (*citing True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014)).  However, *True the Vote* concerns whether or not Mississippi's incomplete poll books that do not include "inactive" voters are the publicly accessible "official list of eligible voters" under the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i), not whether the incomplete list can be used for determining eligibility to cast a ballot on Election Day.  This case is about the removal of eligible voters under Section 8(a), and is fundamentally different because, unlike *True the Vote*, it implicates the disenfranchisement of "inactive" voters.  If Defendants' argument is correct, a state can exempt its poll books from being covered by Section 8's prohibition on removing voters by doing the exact thing that Section 8 prohibits: removing the subset of voters designated as "inactive" from what would otherwise be an "official list of eligible voters."  *Buescher*, 750 F. Supp. 2d at 1265. Such an outcome would strip Section 8 of any practical meaning.

Defendants' argument that NYSVoter is the "official list of eligible voters" ignores the reality that, in New York elections, the poll books constitute the only lists of eligible voters that are available to poll workers on Election Day.  *See infra* p. 10.  While databases containing inactive voters' information are kept in county boards of elections' offices, poll workers cannot access those lists on Election Day, and they are not trained to call the county office when a voter does not appear on the list of "active" voters at the polling place.  *See* Compl. ¶ 34, Exh. C. Inactive voters are treated the same as voters who have never registered to vote; poll workers tell them they are not on the list and no attempt is made to ascertain whether they have appeared at the right polling place.  *Id.* ¶¶ 6, 29.  If an "inactive" voter persists in seeking to vote, he or she is

---

[2] Nearly all of the other 48 states make "inactive" voters' names available at polling places and either use a unique designation to indicate "inactive" status or employ different procedures for processing these individuals.  *See* Compl. Exh. C.

not permitted to vote a regular ballot but instead is given an affidavit ballot that frequently will not be counted. *Id.* Since the poll books are the official list used by poll workers when determining voter eligibility on Election Day, Section 8's requirements must apply to poll books.

In sum, Section 8 prohibits a State from "remov[ing] the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence" unless and until one of the following two conditions is met: (1) the voter has confirmed in writing that he or she has moved to a different jurisdiction; or (2) the voter has failed to respond to a notice seeking confirmation that the voter continues to reside in the jurisdiction, and the voter failed to vote in two consecutive general elections for federal office. 52 U.S.C. § 20507(d). By removing eligible "inactive" voters from poll books – the official list of eligible voters used in New York elections – without waiting for two general election cycles to pass, Defendants have violated Section 8.

**B.     The New York Election Law, As Applied, Violates Section 8 of the NVRA**

Defendants argue that the NVRA "does not provide relief for … 'de facto' removal." Defs.' Mot. at 11. But, Defendants cite no authority for this proposition, and simply ignore or minimize the NVRA cases in which courts ordered relief based on de facto removal.

1.     Courts recognize de facto removal claims

Courts have ordered relief in at least two NVRA cases brought by the United States Department of Justice ("DOJ") that included a de facto removal claim. *See Second Order Extending and Modifying Stipulation and Order Originally Entered April 21, 1994, United States v. Cibola Cty*, No. 1:93-cv-01134-LH-LFG, Dkt. 91, at 2 (D.N.M. Mar. 19, 2007) (Exhibit 1); Stipulation of Facts and Consent Order, *United States v. Bd. of Election Comm'rs for the City of St. Louis*, No. 4:02-CV-1235-CEJ, at ¶¶ I-XXXIII, pp. 7-20 (E.D. Mo. Aug. 14, 2002) (Exhibit 2). The *Cibola County* and *City of St. Louis* courts entered or modified an existing consent

decree and ordered relief based on a finding that the jurisdiction's list maintenance procedures, in combination with other deficiencies in the State's election administration policies and procedures, disenfranchised affected voters.

In *Cibola County*, the court directed the county "to come into complete compliance with the … NVRA" because the county and its officials conceded that "their voting practices and procedures violate[d] the National Voter Registration Act." Exh. 1, (Second Order), at 1-2; *see also* Amended Joint Stipulation, No. 1:93-cv-01134-LH-LFG, Dkt. 89, at 6 (D.N.M. Jan. 31, 2007) (conceding that the county "violate[d] Section 8 of the NVRA").[3]  The NVRA violation occurred due to "the [c]ounty's practice of having voters' names removed from the registration list or placed on the inactive list solely on the basis that the voter had not voted in any election for two federal election cycles." *Id.* at 4.  This practice, in combination with other election administration failures such as faulty provisional ballot procedures, resulted in the disenfranchisement of voters.  *Id.* at 4-5.  Similarly, in *City of St. Louis*, the court found that "it [was] the combination of [] factors, and not any one factor standing alone, that constituted a de facto removal under the NVRA." Exh. 2 (Stipulation of Facts and Consent Order) at 8.

Defendants seek to distinguish *United States v. Bd. of Elections Comm'rs for the City of St. Louis* on factual grounds.  Defs.' Mot. at 11-12 (noting that "[t]o the extent this Court may find the … Order persuasive, there are several factors that distinguish the St. Louis matter with New York's procedure").  However, that there are distinctions in the manner in which the de facto violation of the NVRA occurred is irrelevant to the issue of whether a claim for de facto removal exists as a matter of law.  Moreover, Defendants' brief neglects to mention that to

---

[3] The order entered by the three-judge panel for the District of New Mexico in *Cibola County* incorporated an Amended Joint Stipulation previously agreed upon by DOJ and Cibola County. Second Order, Dkt. 91, at 2.

remedy the NVRA violation in *St Louis,* the board of elections in St. Louis was required to provide lists of "inactive" voters to poll workers at each voting precinct for the duration of the consent decree. *Id.* ¶¶ III, at 9; XI-XII, at 12. Defendants seek to minimize the central role that St. Louis' inactive voter policy played in the court finding an NVRA violation, but the "other factors" referenced in the consent decree – such as a lack of poll worker telephone access and the lack of notice to "inactive" voters – would have been of no moment had St. Louis included inactive voters' names on the voter lists at polling places. *Id.* ¶ 7, at 4; ¶ II, at 8.

      2.    <u>The Complaint alleges facts sufficient to show de facto removal</u>

It is beyond dispute that Plaintiff has alleged sufficient facts to establish a plausible claim that the combination of "inactive" status and other factors constitutes de facto removal. Those additional factors include that: (i) poll workers rarely inform "inactive" voters that they may vote by affidavit ballot; (ii) voters who are told their names are not in the poll book at their poll site often choose to leave without casting an affidavit ballot; and (iii) affidavit ballots are often not counted. Dkt. 1 ("Compl."), at ¶ 35.

Defendants contend that Plaintiff does not adequately allege facts showing examples of the other factors. *See* Defs.' Mot. at 14, 16.   Here, Plaintiff's de facto removal claim is based upon the following factual allegations and the inferences drawn therefrom:  (i) there are nearly 200,000 "inactive" voters in New York, Bronx, and Westchester counties alone (Compl. at ¶ 37); (ii) Plaintiff learned through calls received on its hotline that "inactive" voters are routinely told by poll workers that they are not registered to vote (*id.* at ¶ 6); (iii) Plaintiff's experience assisting numerous voters who believed they were registered to vote but did not appear on the rolls at the polling place (*id.* at ¶ 49); (iv) and the letter by the New York State Attorney General, which states that there is inconsistent guidance regarding affidavit ballots (*id.* at Exh. A).  Such facts, which must be construed "in the light most favorable to the plaintiff" and from which the

court must draw all reasonable inferences, are more than sufficient to state a claim for de facto removal in violation of Section 8.

In any event, at the pleading stage, the Complaint need not allege even this level of detail. *See*, *e.g.*, *Irrera v. Humphreys*, 859 F.3d 196 (2d Cir. 2017) (plaintiff pled retaliation claim on the theory that defendant's negative references had prevented him from receiving any job interviews, and the court found that the allegation was plausible given the parties' antagonistic relationship, even though the complaint did not allege that plaintiff was even aware of any negative reference). Indeed, a claim is plausible when inferences supporting the claim may be made from "common experience." *See id.* (finding that the plaintiff's allegations supporting his claim of retaliation were plausible based on the Court's "common experience" and therefore the plaintiff's pleadings were sufficient to survive a motion to dismiss). Plaintiff's Complaint easily clears this low hurdle for alleging a de facto removal claim.

### C.   Defendants' Interpretation of Section 8 Conflicts with the Statutory Purpose and Legislative History of the NVRA

In enacting the NVRA, Congress sought to implement a uniform nationwide system of voter registration to help "increase the number of eligible citizens who register to vote," and to eradicate discriminatory and unfair registration practices that diminish voter turnout. 52 U.S.C. § 20501(b)(1). Defendants' interpretation of Section 8 conflicts at all turns with the NVRA's purpose of "enhanc[ing] the participation of eligible citizens as voters." 52 U.S.C. § 20501(b)(2); *see also United States v. Louisiana*, 196 F. Supp. 3d 612, 670 (M.D. La. 2016) (rejecting "Defendants' unduly cribbed interpretation" because it clashed with the NVRA's "primary purpose" to "increase the number of eligible citizens to register to vote" (internal quotation marks omitted)) *vacated on other grounds*, No. 3:11-CV-470-JWD-RLB, 2017 WL 4118968 (M.D. La. Aug. 21, 2017). Adopting Defendants' argument that any practical

obstacles to voters actually casting ballots that count are irrelevant so long as voters are formally on one list of eligible voters would upset the balance set by Congress between enhancing voter participation and protecting the integrity of the electoral process.  52 U.S.C. §§ 20501(b)(2)-(3). Courts have recognized that the statute did not intend to myopically focus on increasing registration alone, as "the ultimate goal of registering to vote is to permit a person actually to vote." *U.S. Student Ass'n Found. v. Land*, 546 F.3d. 373, 383 (6th Cir. 2008); *see also North Carolina State Conference of the NAACP v. North Carolina State Bd. of Elections*, 2016 WL 6581284, at *11(M.D.N.C. Nov. 4, 2016) ("Voter enfranchisement cannot be sacrificed when citizens through no fault of their own have been removed from the voter rolls," particularly when that scenario "could lead to a voter's wrongful exclusion from the voter rolls on Election Day."); *Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F. Supp. 2d 1320, 1331 (N.D. Ga. 2012) ("Congress, concerned with discriminatory and unfair registration procedures, implemented the NVRA to deal with state laws and practices it deemed problematic").

      1.     <u>The Court should interpret the "official list of eligible voters" in a manner that "enhances the participation of eligible citizens as voters"</u>

The poll book or the "registration poll records," not NYSVoter, is what poll workers use to make the day-of decision regarding whether a particular voter can vote on Election Day.  *See* N.Y. Elec. Law § 8-202 (noting that election inspectors or clerks "shall have charge of the registration poll books or computer generated registration lists" on Election Day); *see also* N.Y. Elec. Law § 8-302 (noting that election inspectors at polling locations shall "verify[] the rights of persons to vote.").  Those poll workers do not have access to NYSVoter on Election Day; rather, poll workers only have access only to poll books.  *See* N.Y. Elec. Law § 8-302 (directing that to determine a voter's eligibility to cast a ballot a "registration poll record," the "poll ledger" or a "computer generated registration list" is to be consulted); N.Y. Elec. Law § 8-202 (noting that at

each polling location, "[t]he ballot scanners, ballot marking devices, and privacy booths shall be placed at least four feet from the table used by the inspectors in charge of the poll books"); N.Y. Elec. Law § 8-304 (noting, in general, that before being allowed to vote, "[a] person … shall be required … to sign his name on the back of his registration poll record … or on the line of the computer generated registration list reserved for his signature"). Thus, for all practical purposes, poll books function as the "official list of eligible voters." *See Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (rejecting a statutory interpretation that would undermine the purpose of the National Firearms Act, 18 U.S.C. 44, and interpreting the terms "persons" and "transferees" in a manner that focused on the practical realities rather than legal formalities of a transaction). If poll books were not subject to the protections mandated by the NVRA, the protections of federal election law would be meaningless in New York.

The Sixth Circuit has rejected a narrow construction of Section 8 similar to the one Defendants advance here. *See Land*, 546 F.3d at 386. *Land* involved a Michigan voter registration and removal scheme that circumvented Section 8's protections against removal. When a person registered to vote, the local election board immediately sent out a voter ID card to the applicant's address. If the voter card bounced back, the voter's registration would be cancelled. The local Michigan election board argued that the act of receiving the voter ID card completed the registration process, and thus with respect to those voters whose cards bounced back, Section 8 did not apply. The *Land* defendants maintained that such eligible voters were never "registrants" to be "removed." *Id.* In rejecting this reasoning, the Sixth Circuit eschewed defendants' semantic argument in favor of a functional analysis: "it does not matter whom Michigan decides to call a 'registrant'; what matters is, functionally speaking, when an individual becomes able to cast a ballot." *Id.* at 384. Just as Michigan could have "completely

ignore[d] the requirements of the NVRA" through defining away the term registrant, New York could completely ignore the requirements of Section 8 through defining "official list of eligible voters" to refer to a database that does not determine, "functionally speaking," when individuals are able to cast ballots.  States may not "circumvent the limitations of the NVRA by simply restricting the definition, and hence the federal protections of the NVRA."  *Id.* at 382.

>    2.    <u>De facto removal claims are consistent with the legislative history and purpose of the NVRA</u>

The legislative history of the NVRA also supports the existence of a de facto removal claim.  The House and Senate Reports contain the following passage concerning the removal provision in Section 8:

> Within the official list of eligible voters, notations (such as an asterisk or "I" for inactive status) may be made of those eligible voters who have failed to respond to a notice under Section 8(d)(2).  The requirement that names with notations be maintained on the official list of eligible voters permits the State to decline to use these names in performing the type of routine, administrative responsibilities ***that do not impair the right of such voters to vote as set forth in the Act*** and as protected by the Voting Rights Act.

S. REP. 103-6, 33 (emphasis added); H.R. REP. 103-9, 16.  The House and Senate Reports therefore confirm that States may move voters to inactive status and make notations to that effect in the official list of eligible voters, but cannot use that distinction to impede the ability of such voters to vote.  But that is precisely what Defendants seek to do here, by leaving such voters off the poll book used to determine access to the ballot on Election Day.

Defendants' theory that maintaining inactive voters on NYSVoter but not making that list available on Election Day somehow complies with Section 8(a)(3) would give election officials carte blanche to ignore inactive voters entirely or to take affirmative steps to disenfranchise them, so long as they keep them on the separate list.  The NVRA does not permit the

disenfranchisement of eligible "inactive" voters so long as election officials satisfy a formalistic rule. *See Land*, 546 F.3d at 382.  As alleged in the Complaint, New York's procedures with respect to inactive voters, alone and in combination with other factors, impair their right to vote.

> 3.    Requiring "inactive" voters to vote by provisional ballot instead of by regular ballot disenfranchises such voters

The NVRA's legislative history and stated purposes also defeat Defendants' argument that requiring all "inactive" voters to cast provisional ballots "cannot be a violation of section 8 of the NVRA."  Defs.' Mot. at 6.  First, Congress has expressed that "an underlying purpose" of the NVRA is that, "once registered, a voter should remain on the list of voters so long as the individual remains eligible to vote."  H.R. REP. 103-9, 17-18, 1993 U.S.C.C.A.N. 105, 121-22. Provisional ballot voters, unlike voters who cast regular ballots, run the risk of being disenfranchised.  While HAVA says that voters not on the "official list of eligible voters for the polling place" should be offered affidavit ballots, 52 U.S.C. § 21082(a), those affidavit ballots must be counted only if State law authorizes it.  52 U.S.C. § 21082(a)(4).  That caveat is a significant one, as a majority of affidavit ballots cast by New Yorkers are not counted each election cycle.  Compl. ¶¶ 6, 29.

Defendants argue that the House Report provides that "[u]nder certain circumstances it would be appropriate, and in compliance with the requirements of this Act, to require that [inactive voters] vote by some form of provisional ballot,"[4] H.R. REP. 103-9, 17-18, 1993 U.S.C.C.A.N. 105, 121-22.  This limited, situation-specific endorsement does not justify mandating the use of affidavit ballots for "inactive" voters, along with the attendant practical requirement that voters must actively request them when denied the opportunity to vote by

---

[4] As Defendants point out, this passage refers to a subset of "inactive" voters who did not respond to change of address cards and whose "registration records incorrectly indicate that [the] registrant has changed his or her address."  *Id*.

regular ballot.  The provisional voting section of HAVA was enacted so that "[n]o voter will be turned away from the polls because of a mistake or oversight at the administrative level."  148 Cong. Rec. S10488-02.  Defendants seek to take the provisional voting section, which attempted to protect voters by providing them a "fail-safe mechanism," *id.*, and turn it against voters to justify additional barriers to the franchise.

Moreover, if *offering* provisional ballots to inactive voters complies with the requirements of the NVRA only under certain circumstances, Congress understood that there were other circumstances in which offering provisional ballots would not comply with the NVRA.  This runs counter to Defendants' absolutist position that offering provisional ballots insulates New York's election procedures, even though the result is the disenfranchisement of tens of thousands of eligible voters.  *See* Compl. at ¶ 6 ("Those voters who are offered an affidavit ballot often choose to leave the polling precinct without casting the affidavit ballot, and even those voters who do cast an affidavit ballot are often disenfranchised, as the majority of affidavit ballots cast by New Yorkers in each election are not counted."); *see also*, *e.g.*, *Veasey v. Abbott*, 830 F.3d 216, 254-55 (5th Cir. 2016) (en banc) (identifying voters whose provisional ballots were not counted due to barriers created by the 2011 Texas voter identification statute); *North Carolina State Conference of the NAACP v. McCrory*, 831 F.3d 204, 217 (4th Cir. 2016) (finding that African Americans disproportionately voted provisionally); *North Carolina State Conference of the NAACP v. North Carolina State Bd. of Elections*, 2016 WL 6581284, at *10 (M.D.N.C. Nov. 4, 2016) (holding that wrongfully purged "inactive voters" who go to their home precincts should cast regular, not provisional, ballots).

## II.    PLAINTIFF HAS ARTICLE III STANDING

An organizational plaintiff has standing to bring a claim on either of two bases: (1) that the organization itself has been injured by the Defendants' wrongful conduct, which is known as

organizational standing, or (2) that the organization has members who have been injured and that prosecution of the claims may be done by the organization on their behalf without the necessity of individual participation, which is known as associational standing. Plaintiff needs to satisfy only one of the two methods to have standing to pursue the claims. Here, Common Cause/New York easily meets the requirements of both organizational standing and associational standing.

When considering a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1), general factual allegations of injury are sufficient to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether a plaintiff has standing, courts must accept all material allegations in the complaint as true and construe the complaint in favor of the plaintiff. *Thompson v. Cty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994).

### A.    Plaintiff Has Alleged Facts Sufficient to Establish Organizational Standing

A plaintiff has organizational standing and may sue on its own behalf for injuries it has suffered if: (1) the organization has suffered an injury-in-fact that is concrete and particular, as well as actual or imminent rather than hypothetical; (2) the organization's injury is traceable to the defendant, meaning that there must be a causal connection between the injury and the defendant's conduct; and (3) a favorable outcome in the case will redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.* 528 U.S. 167, 180-81 (2000). Defendants' only challenge to Common Cause/New York's organizational standing is that Plaintiff failed to allege a particularized or concrete injury.[5]

Diversion of resources is a recognized injury-in-fact sufficient to establish organizational standing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Nnebe* v. *Daus*, 644 F.3d 147, 157 (2d Cir. 2011). An organization suffers an injury-in-fact when it directs money and

---

[5] Defendants do not contest that Plaintiff sufficiently alleged causality and redressability in the complaint. Accordingly, Plaintiff does not address those prongs in this brief.

resources away from its other activities in order to focus on "established organizational interests." *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110-11 (2d Cir. 2017). The resources expended need not be monetary or necessarily quantifiable so long as they would not have existed but for the challenged action. *See, e.g., Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 174-75 (2d Cir. 2005) (expending resources to locate, recruit, manage, train, and supply volunteers confers standing).

Courts routinely recognize diversion of resources as an injury-in-fact in cases where, as here, voting rights organizations have chosen to expend resources to address barriers to voter participation created by election laws. *See, e.g., Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014) (finding injury where defendant's conduct "impair[ed] the organization's ability to engage in its own projects by forcing the organization to divert resources"); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350-51 (11th Cir. 2009) (diverting resources from regular activities to educate and assist voters with complying with photo identification law confers standing); *Greater Birmingham Ministries v. Merrill*, 250 F. Supp. 3d 1238, 1242-43 (N.D. Ala. 2017) (expending resources to engage with the Secretary of State and others to lessen the effect of the law, as well as to conduct voter education and assistance, confers standing); *Veasey v. Perry*, 29 F. Supp. 3d 896, 903-04 (S.D. Tex. 2014) (finding standing for an organization that showed that the violation of its members' rights would cause a drain on its resources that were otherwise committed to those members' rights).

Here, Plaintiff has suffered an injury-in-fact because Plaintiff has diverted resources from its registration and mobilization efforts to assist voters who have been improperly placed on "inactive" status and removed from the poll books, engage in post-election follow-up work after

receiving numerous complaints from voters who were confused about their "inactive" status, testify at hearings, conduct press conferences to educate the public, and discuss the issue with the staff of the New York State Board of Elections.  Compl. at ¶¶ 50-51.  As a non-profit organization, Plaintiff's resources are limited and, as a result of Defendants' conduct, Plaintiff has had to divert its resources that would have been spent elsewhere.  Moreover, Plaintiff will be forced to do so again in future elections unless it obtains the relief requested in this case.

An organization also suffers injury-in-fact where the Defendant's actions interfere with its ability to accomplish its organizational mission.  *New York Civil Liberties Union* v. *NYC Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).  Plaintiff's mission is to promote an open, honest and accountable government that serves the public interest, and to empower ordinary people to make their voices heard in the political process through increasing voter participation and mobilization.  Compl. at ¶ 12.  That Defendants have improperly placed voters on "inactive" status and removed registered voters from the voting rolls contradicts Plaintiff's mission.  Therefore, Defendants' NVRA violations have impeded and will continue to impede Plaintiff's mission to empower ordinary people to make their voices heard in the political process.

### B.      Plaintiff Has Alleged Facts Sufficient to Establish Associational Standing

A plaintiff has associational standing and may sue on behalf of its members if: (1) some of the organization's members have standing to sue in their own right; (2) the interest the organization seeks to protect in the suit is germane to the organization's purpose; and (3) adjudication of the claim and relief requested does not require the participation of the organization's individual members.  *Hunt v. Washington State Apple Advert. Comm'n*. 432 U.S. 333, 343 (1977).

Defendants do not contest that each of these elements is satisfied.  Instead, Defendants incorrectly argue that an organization must name specific members in order to establish associational standing.

           1.      <u>Plaintiff does not need to name specific members in order to sufficiently allege associational standing</u>

Defendants' argument is based solely on their incorrect interpretation of *Summers v. Earth Island Institute*, 555 U.S. 488 (2009).  *Summers* does not, however, articulate this principle and should not be read to create such a requirement.  The Ninth Circuit recently addressed this question in *Nat'l Council of La Raza v. Cegavske*, in which an organization challenged a Nevada voting law for violating the NVRA.  There, the Court held that the plaintiff organization had sufficiently alleged associational standing without naming any of its individual members.  800 F.3d 1032, 1041 (9th Cir. 2015) ("We are not convinced that *Summers,* an environmental case brought under the National Environmental Policy Act, stands for the proposition that an injured member of an organization must always be specifically identified in order to establish Article III standing for the organization.")

Indeed, the Ninth Circuit's holding is consistent with the Second Circuit's pre-*Summers* case law.  *See Lopez Torres v. New York State Bd. Of Elections*, 462 F.3d 161, 169-70 n. 1 (2d Cir. 2006), *rev'd on other grounds*, 552 U.S. 196 (2008) (holding that Plaintiff possessed associational standing because there was a clear likelihood that its members – 20,000 voters from across New York State – had suffered a concrete injury to their First Amendment rights that was fairly traceable to defendants' conduct and could be remedied by court action); *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity* v. *Downtown Dev., Inc.*, 448 F.3d 138, 145 (2d Cir. 2006) (noting that the "defendants cite to no authority—nor are we aware of any—that supports the proposition that an association must "name names" in a complaint in order properly

to allege injury in fact to its members.").  At least one other circuit has taken the same approach.  *See Sandusky Cty. Democratic Party v. Blackwell,* 387 F.3d 565, 574 (6th Cir. 2004) (explaining that an organization could not be expected to identify the specific voters who would seek to vote at an allegedly improper polling place or be inadvertently dropped from the rolls).

Moreover, even if *Summers* is interpreted to require an organization to identify specific members, the rule does not apply here.  In *Summers*, the Court was evaluating whether the plaintiff had standing in connection with the defendant's motion for summary judgment.  The standard at the motion to dismiss stage is much less burdensome than that for a motion for summary judgment.  *See Defs. of Wildlife*, 504 U.S. at 561 ("at the pleading stage, general factual allegations of injury . . . may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (internal citation omitted)).  Therefore, Plaintiff should not be held to the summary judgment standard applied in *Summers.*

In addition, *Summers* is distinguishable because Plaintiff's members are the object of the challenged government action.  In *Summers*, the plaintiff was not the object of the government action, and the Court acknowledged that, in such circumstances, standing is "'substantially more difficult' to establish." 555 U.S. at 494 (quoting *Defs. of Wildlife, supra,* at 562).  The environmental plaintiff organization in *Summers* sought to challenge the Forest Service's creation of an exception to the notice and comment procedures for granting contracts for salvage sales of timber.  555 U.S. 495-496.  As such, the organization's members were clearly not the object of the Forest Service's action.  Here, however, Plaintiff's members are citizens of New York State and therefore are the direct object of the New York Board of Election's enforcement

of the New York voting law in violation of the NVRA.  Thus, any heightened standard in

*Summers* does not govern this action.

 Defendants also cite *Small v. General Nutrition Companies, Inc.*, 388 F. Supp. 2d 83

(E.D.N.Y. 2005), to support their position that organizations must specify individual members

who are harmed.  The Second Circuit, however, has held that organizations need not identify

specific members to assert associational standing in at least two cases decided after *Small*.  *Lopez*

*Torres*, 462 F.3d at 169-70 n.1; *Bldg. & Const. Trades Council of Buffalo*, 448 F.3d at 145.

> 2.    Some of Plaintiff's members would have standing to sue in their own right
>        because they have suffered an injury-in-fact

To the extent Defendants dispute that Plaintiff's members have not suffered an injury,

Plaintiff has alleged sufficient facts based on two theories of injury-in-fact.  First, some of

Plaintiff's members have suffered injury-in-fact because they have been improperly placed on

"inactive" status and removed from the poll books.  Plaintiff's members are entitled to the rights

and privileges enumerated in the NVRA, including the process by which a state may remove

voters from the poll books.  Defendants have violated and continue to violate the NVRA, and as

a result, some of Plaintiff's members have been improperly placed on "inactive" status and

removed from the poll books.  Thus, some of Plaintiff's members have suffered an injury-in-fact.

Second, Plaintiff clearly has alleged sufficient facts to demonstrate that at least one of its

members faces a realistic danger of being improperly placed on inactive status before the next

election.  Common Cause/New York has more than 70,000 members in New York.  Compl. ¶ 12.

Data available on the New York State Board of Elections' website confirms that at least some of

these members are almost certain to be "inactive" voters in the next election because as of

November 1, 2017, 7.3 percent of the total eligible voter pool (915,585 voters) was listed as

inactive.[6] Similarly, there were 1,016,817 inactive voters as of November 1, 2016, and 979,038 inactive voters as of November 1, 2014.[7]  As alleged in the Complaint, "inactive" voters who are members of Common Cause/New York are at risk of disenfranchisement as a result of New York's ongoing violations of the NVRA.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Defendants' motion to dismiss the complaint for failure to state a claim should be denied.  Alternatively, should the Court grant Defendant's motion, it should be with leave to amend the Complaint.

---

[6] "NYSVoter Enrollment by County, Party Affiliation and Status," *available at* https://www.elections.ny.gov/EnrollmentCounty.html (last accessed Dec. 18, 2017).

[7] Inactive voters constituted 8.3 and 8.1 percent of the total voter pool in 2014 and 2016, respectively.  *Id.*

Dated:  New York, New York.
       December 22, 2017

Respectfully submitted,

DECHERT LLP


By:/s/ Neil A. Steiner
   Neil A. Steiner
   1095 Avenue of the Americas
   New York, NY  10036-6797
   (212) 698-3500

   Ezra Rosenberg (*pro hac vice*)
   John Powers (*pro hac vice*)
   Lawyers' Committee for Civil Rights
   Under Law
   1401 New York Avenue, N.W., Suite 400
   Washington, D.C.  20005
   (202) 662-8336
   erosenberg@lawyerscommittee.org
   jpowers@lawyerscommittee.org

   Jose L. Perez
   Joanna Elise Cuevas Ingram
   LatinoJustice PRLDEF
   99 Hudson St., 14th Floor
   New York, NY 10013
   (212) 219-3360
   jperez@latinojustice.org
   jcuevas@latinojustice.org

   *Attorneys for Plaintiff*
   *Common Cause/New York*