UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
COMMON CAUSE/NEW YORK, as an
organization and on behalf of its members,

                                                                                                                      **Case No. 1:17-cv-06770-AJN**

                                             -Plaintiffs,

-against-

ROBERT A. BREHM, Co-Executive
Director, TODD D. VALENTINE,
Co-Executive Director, PETER S. KOSINSKI,
Co-Chair, DOUGLAS A. KELLNER, Co-Chair,
ANDREW J. SPANO, Commissioner, and
GREGORY P. PETERSON,
Commissioner, in their official capacities as
Commissioner of the NEW YORK STATE
BOARD OF ELECTIONS,

                                             -Defendants.
-------------------------------------------------------------------

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS PURSUANT
TO FEDERAL RULES OF CIVIL PROCEDURE 12 (b)**

                                                        **NICHOLAS R. CARTAGENA**,
                                                        Deputy Counsel
                                                        **WILLIAM J. MCCANN**,
                                                        Deputy Counsel
                                                        **BRIAN L. QUAIL**,
                                                         Counsel
                                                        *Attorneys For Defendants*
                                                        New York State Board of Elections
                                                         40 North Pearl Street, Suite 5
                                                         Albany, New York 12207
                                                         Phone: (518) 474-2064

**TABLE OF CONTENTS**

I.   New York Election Law § 5-213 Facially Complies
     with the Express Language of Section 8 of the NVRA
     and its Congressional Intent…………………………………………………… 1

     A.  Election Law Background..………………………………………………1

     B.  The Structure of the Election Law…………………………………………..3

     C.  Requiring an Inactive Voter to Vote via an Affidavit Ballot is not
         Disenfranchising……………………………...……………………..……….4

II.  Section § 5-213 is Facially Valid Under Section 8 of the
     NVRA…………………………………………………………………………………7

III. Plaintiff Fails to Allege Adequate Facts to State a
     Claim……………………..…………………………………………………………. 9

IV.  Conclusion…………………………………………………………………………..10

## **TABLE OF AUTHORITIES**

**CASES**                                                                                                                    **Pages**

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)…………………………………………………..........10

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)……………………………………………10

Common Cause of Colorado v. Buescher, 750 F. Supp. 2d 1259 (D. Colo. 2010)…………..8

Hayden v. Pataki, 2004 WL 1335921 (S.D. N.Y. 2004)……………………………………….. 5

North Carolina State Conference of the NAACP v. McCrory, 831 F.3d 204 (4th Cir. 2016).6

True the Vote v. Hosemann, 43 F. Supp. 3d 693 (S.D. Miss. 2014)…………………………8

Veasey v. Abbott, 830 F.3d 216 (5th Cir. 2016)……………………………………………..6

W. Min. Council v Watt, 643 F2d 618, 624 [9th Cir 1981]………………………………10

**STATUTES**

52 U.S.C. § 20507(e)(2)(B)…………………………..……………………………………………3

N.Y. Election Law § 4-100(1)……………………………………………………………………..2

N.Y. Election Law § 4-104………………………………………………………………………...2

N.Y. Election Law § 5-106(2)……………………………………………………………………..5

N.Y. Election Law § 5-213……………………………………………………………….…..4, 5, 7

N.Y. Election Law § 5-614………………………………………………………………………...7

N.Y. Election Law § 8-302………………………………………………………………………...2

N.Y. Election Law § 8-302(3-a)…………………………………………………………………....3

N.Y. Election Law § 8-104(1-a)(c)………………………………………………………………...3

N.Y. Election Law § 9-209…………………………………………………………………......3, 7

N.Y. Election Law § 17-130(3)…………………………………………………………………….4

9 NYCRR 6217.1……………………………………………………………………………………7

HAVA § 302……………………………………………………………………………………......8

1976 N.Y. Laws ch. 233, § 8-302 (6)(b)………………………………………………………….9

New York's affidavit ballot process secures the ability to vote.  New York's Election Law provides a broad right to an affidavit ballot for any voter whose name does not appear in a poll book, and provides that such affidavit ballot will be counted when the voter who casts the affidavit ballot does so from the correct polling site for the voter's current address, provided the voter is registered to vote anywhere within the jurisdiction of the local board of elections. Additionally, if the affidavit voter has moved, the affidavit ballot will effectuate the transfer of the voter's registration address.  If the voter was in inactive status and casts an affidavit ballot, the affidavit will result in the voter being returned to active status.  In so doing, the law enfranchises voters and helps maintain an accurate voter list.

In its papers, Plaintiff has not identified a single instance of a voter disenfranchised by New York's affidavit ballot procedures as set forth in statute or as applied in practice.  Contrary to Plaintiff's assertions in its response, the Election Law is facially valid under the NVRA, Plaintiff failed to state a cause of action and lacks organizational and associational standing.

**I.      The Election Law Complies with the Purpose & Legislative History of the NVRA**

Plaintiff argues that the structure of the New York State Election Law does not comply with the purpose and legislative history of the NVRA as it fails to "enhance the participation of eligible voters to vote."  As the structure of the Election Law effectively provides ballots to all persons claiming to reside in an election district and provides several notice requirements to ensure voters are aware of their rights, Defendants respectfully disagree.

**A. Election Law Background**

The NY Election Law is a comprehensive statutory construct that ensures fair elections and enfranchisement of all eligible voters.  Fair elections are guaranteed by methods that protect the integrity of the ballot. The objective of the law is to secure the rights of qualified electors.

All voters in New York State are assigned an election district.  <u>See</u> Elec. Law 4-100(1).  An election district is a geographically defined and distinct area.  They are the building blocks for electoral political subdivisions, such as Congressional Districts, Assembly Districts and State Senate Districts.  <u>Id</u>.  All voters in an election district are entitled to vote at a single polling place designated for that election district. <u>See</u> Elec. Law § 4-104.

On Election Day, a voter goes to the appropriate polling place and election district table to cast a vote.  Generally, if the voter's name is in the poll book, the voter will sign their name in the poll book and then receive a "regular" ballot that will be cast using a ballot scanner.  <u>See</u> Elec. Law § 8–302.  In the event the voter's name is not in the poll book, and he/she claims to presently live in the election district, state law mandates that the election inspector "consult a map, street finder or other description of all of the polling places and election districts within the political subdivision in which said election district is located and if necessary, contact the board of elections to obtain the relevant information and advise the voter of the correct polling place and election district for the residence address provided by the voter to such poll clerk or election inspector." <u>Id</u>.  This requirement ensures that the voter is at the correct election district.

Further, the voter is provided with a written notice "advising such person of his right to, and of the procedures by which he may, cast an affidavit ballot or seek a court order permitting him to vote." <u>See</u> Elec. Law § 8–302(3-a).  Thereafter, the Election Law requires the election inspector to permit the voter to vote, either through affidavit ballot, or, if the voter received a court order, via the voting machine.  Additionally, Elec. Law § 8-104(1-a)(c) further provides that information be conspicuously posted in the polling place related to instructions on how to cast an affidavit ballot.

Section 9–209 of the Election Law provides for the casting and canvassing of affidavit ballots. Generally, the board of elections, which does have access to NYSVoter and all relevant voter registration records, determines after Election Day whether affidavit ballots were cast by eligible voters. To that end, any registered voter within the jurisdiction of the local board of elections whose name is not in a poll book but votes by affidavit ballot at the correct poll site for his or her address, may cast a ballot that will be counted at the time of canvass. Whether the voter moved to a new place of residence in the county or remains living at the same prior address does not matter. This post-election examination by the board of elections is designed to ensure every eligible voter will have his or her ballot counted.

**B. The Structure of the Election Law Complies with the Purpose of the NVRA**

The NVRA provides several different options for inactive voters, and permits states latitude in implementation. Under the NVRA, inactive voters who have moved in the same jurisdiction and congressional district may vote at their former voting place; however, voting at a former polling place need not be allowed if State Law provides that a voter may vote at the new polling place upon oral or written affirmation by the registrant of the new address. 52 U.S.C. § 20507(e)(2)(B). The New York legislature opted for the second option, and the affidavit ballot process is how it implements that option.

As evidenced by the legislative history, New York opted to remove inactive voters' names from poll books in order to guarantee that inactive voters are able to vote at the poll site embracing the voters' current addresses via an affidavit ballot. Moreover, the legislature wanted to give election inspectors a binary choice, either provide a "regular" ballot that will be canvassed by the voting machine to voters listed in the poll book, or provide an "affidavit" ballot to persons not listed in the poll book. Given that election inspectors only work two to three

3

times a year, it is reasonable to believe that providing additional duties upon election inspectors (e.g. making determinations related to inactive voter's eligibility or determining which ballots a voter is eligible to cast) would bog down the voting process. Historical abuse of challenge and oath processes in poll sites that bogged down voting, for example, lead the legislature to criminalize obstruction and hinderance of voters moving through the election process.  See Election Law § 17-130 (3).

The need to provide an efficient voting process that also ensures voters vote in the correct location for their current address supports New York's process of liberally distributing affidavit ballots and providing a robust, transparent post-election canvassing process that explores every possible basis to enfranchise a voter based on their written affidavit.

Plaintiff's solution appears to be that all inactive voters should be given a "regular" ballot to vote on the voting machine without verifying that the voter is voting at his or her current address.  This is not a valid option as it invites voters who have in fact moved to vote the wrong ballot in the wrong location.  It is respectfully submitted that this is the opposite of the intent and purpose of both the State Election Law and the NVRA.

**C. Requiring an Inactive Voter to Vote via an Affidavit Ballot is not Disenfranchising**

If an inactive voter votes via affidavit ballot at his or her election district, the ballot will be canvassed, and the voter's name restored to active status. See Elec. Law § 5-213.  Other than casting an affidavit ballot, there is no other action the inactive voter must take.  By definition,

this is not "disenfranchising."[1] The state has provided the affidavit ballot method by which inactive voters cast their ballots.

Plaintiff alleges that requiring an inactive voter to vote by affidavit disenfranchises the voter because "voters who are offered an affidavit ballot often choose to leave the polling precinct without casting the affidavit ballot, and even those voters who do cast an affidavit ballot are often disenfranchised, as the majority of affidavit ballots cast by New Yorkers in each election are not counted."  It cannot reasonably be asserted that a voter refusing to vote on an irrational belief that their vote will not be counted is disenfranchising.  Plaintiff alleges a choice that is made by a voter.  Plaintiff does not allege Defendants had a role in this choice, and ignores the pre-election notices sent to voters, the election day notifications provide to voters as a matter of law and the ability of a voter to check his or her voting status by a phone call or on line at any time.  Rather, Plaintiff believes that the mere allegation that some voters choose not to vote via affidavit ballot is sufficient pleading.  Defendant respectfully submits that, at a minimum, the Plaintiff is required to allege elements similar to an Equal Protection claim related to disenfranchisement(e.g. Elec. Law § 5-213 was enacted by the legislature with racially discriminatory motives).  See Hayden v. Pataki, 2004 WL 1335921 (S.D. N.Y. 2004) (holding that N.Y. Elec. Law § 5-106(2), disenfranchising felons during incarceration and parole, were not enacted with discriminatory intent).

As to the second conclusory assertion, Plaintiff fails to allege any facts to show that the majority of affidavit ballots are not counted in New York.  As stated in Plaintiff's Memorandum in Opposition, Plaintiff makes four factual assertions:  (i) that there are nearly 200,000 "inactive"

---

[1] See Black's Law Dictionary, Revised Fourth Edition: "Disfranchise. To deprive of the rights and privileges of a free citizen…; to deprive of any franchise, as of the right of voting in elections(.)"

5

voters in New York, Bronx, and Westchester counties; (ii) that Plaintiff learned through an unspecified number of calls on its hotline that "inactive" voters are told by poll workers that they are not registered to vote; (iii) Plaintiff's experience assisting an unspecified number of voters who believed they were registered to vote but did not appear on the rolls at the polling place; (iv) and a letter by the New York State Attorney General, which states that there is inconsistent guidance regarding affidavit ballots.  <u>See</u> Plaintiff's Memo of Law in Opposition to Motion to Dismiss, pgs. 8-9.  The claim that most affidavit ballots are not counted cannot be reasonably inferred in any of these factual assertions.  None of these assertions make claims in relation to New York's canvassing procedures, and no disenfranchised voter has been identified.

Further, the case law cited by Plaintiff in support of its assertion voting by affidavit is disenfranchising are inapposite.  <u>Veasey v. Abbott</u>, 830 F.3d 216 (5th Cir. 2016) dealt with the issuance of provisional ballots when voters failed to provide identification.  Notably, in Texas, for the provisional ballot to count, the voter was required to produce the state-required identification card within six days after the election.  New York does not have any requirement that voters submit additional evidence or obtain a document after an election for the affidavit ballot to count. In <u>North Carolina State Conference of the NAACP v. McCrory</u>, 831 F.3d 204 (4th Cir. 2016) the Court found that a state law that repealed counting of out-of-precinct provisional ballots was motivated by discriminatory racial intent.  <u>North Carolina State Conference of the NAACP v. North Carolina State Bd. of Elections</u>, 2016 WL 6581284 (M.D.N.C. Nov. 4, 2016) simply held that inactive voters who were wrongfully purged should be placed in the same position as if they were not purged (in North Carolina, inactive voters do not vote via a provisional ballot).

## II. Section § 5-213 is Facially Valid Under Section 8 of the NVRA

Contrary to Elec. Law § 5-614 and 9 NYCRR 6217.1, which establishes NYSVoter as the official list of eligible voters of New York State, Plaintiff maintains that poll books should be considered an official list of eligible voters within the meaning of the NVRA. Plaintiff argues that election inspectors make eligibility determinations, and because election inspectors only have access to poll books and do not consult NYSVoter in their duties, poll books should be considered an official list of eligible voters. However, election inspectors <u>do not</u> determine the eligibility of an inactive voter; rather, the election inspector provides the appropriate ballot the voter receives. Eligibility is determined later by the board of elections with all of the tools at its disposal to enfranchise every voter possible.

As previously stated above, not listing inactive voters in poll books is a mechanism that triggers the statutory requirement that the voter be offered an affidavit ballot. As Elec. Law § 5-213 provides that inactive voters who failed to respond to an address confirmation card may vote via written affirmation that they still live at the same address, and as the NVRA is silent on how such voters may vote, § 5-213 is facially in full compliance. This structure is a policy decision the State made, given the circumstances New York faces in administrating elections.

As outlined in section I(A) of this Reply, an inactive voter's vote is protected through several different interactions in the voting process. First, an election inspector consults with a map or street finder to determine if the voter is in the correct polling location. Next, the inspector provides a written notice advising the voter of his or her right to vote via an affidavit ballot or seek a court order. Additionally, a bill of rights is posted in poll sites notifying voters of their right to vote via an affidavit ballot. Lastly, § 9-209 provides for a board of inspectors that investigates and determines whether a voter was eligible to cast a ballot.

Plaintiff cites Common Cause of Colorado v. Buescher, 750 F. Supp. 2d 1259 (D. Colo. 2010) as authority that requires poll books to be considered the official list of registered voters. Colorado did not hold that poll books, by their very nature are the official list of eligible voters; rather, the Court in Colorado found that, because poll books in Colorado list both active and inactive voters, then it is to be considered an official list of eligible voters. Unlike Colorado, New York does not list both active and inactive voters in its poll books. Nor is the poll book the final reference as to whether a voter is eligible to vote from the poll site. Thus, the poll book is not the official list of all eligible voters. See True the Vote v. Hosemann, 43 F. Supp. 3d 693 (S.D. Miss. 2014).

Additionally, Plaintiff cites § 302 of HAVA as additional support for its argument that poll books are considered the official list of eligible voters. HAVA § 302 provides "[i]f an individual declares that such individual is a registered voter in the jurisdiction in which the individual desires to vote and that the individual is eligible to vote in an election for Federal office, but the name of the individual does not appear on the official list of eligible voters for the polling place or an election official asserts that the individual is not eligible to vote, such individual shall be permitted to cast a provisional ballot as follows…" Common Cause suggests that provisional ballots are *only* available if a voter is not listed on the "official list of registered voters", which, in this case, would be NYSVoter.

First, the language of the statute itself does not limit provisional ballots to voters who are not on the official list. The statute also includes instances where "an election official asserts that the individual is not eligible to vote…" Additionally, HAVA's provisional ballot requirement is not exclusive. States may expand upon them. In fact, New York has a more expansive affidavit

8

ballot requirement which dates to the recodification of the New York Election Law in 1976, far earlier than HAVA's provisional ballot requirement.  1976 N.Y. Laws ch. 233, § 8-302 (6)(b).

### III. Plaintiff Fails to Allege Adequate Facts to State a Claim

Common Cause argues that it is "beyond dispute that Plaintiff has alleged sufficient facts to establish a plausible claim that the combination of "inactive" status and other factors constitutes de facto removal."  Common Cause argues that these other factors include: (i) poll workers "rarely inform "inactive" voters that they may vote by affidavit ballot; (ii) voters who are told their names are not in the poll site often choose to leave without casting a ballot; and (iii) affidavit ballots are often not counted.  While the hurdle for pleading stage is not particularly high, it must meet a bare minimum of reasonableness in detailing its allegations.  It is respectfully submitted that Common Cause does not meet this threshold.  Not one allegedly disenfranchised voter is a plaintiff, and not one disenfranchised voter was identified in the plaintiff's pleadings.

Plaintiff alleges that its claims are backed up by the following factual allegations: (i) that there are nearly 200,000 "inactive" voters in New York, Bronx, and Westchester counties; (ii) that Plaintiff learned through an unspecified number of calls on its hotline that "inactive" voters are told by poll workers that they are not registered to vote; (iii) Plaintiff's experience assisting an unspecified number of voters who believed they were registered to vote but did not appear on the rolls at the polling place; (iv) and a letter by the New York State Attorney General, which states that there is inconsistent guidance regarding affidavit ballots.

It is unclear how the fact that there are 200,000 inactive voters in New York, Bronx, and Westchester Counties relates to any of the three "other" factors.  One cannot reasonably infer that poll workers rarely inform inactive voters that they may vote via an affidavit ballot, that

voters choose to leave without casting a ballot, or that affidavit ballots are rarely counted by the number of inactive voters in three counties.  Further, the cited Attorney General letter, which contrary to the Complaint, does not state that "voters not in the poll book" are rarely offered a ballot.  The letter states that its investigation revealed that there is inconsistent guidance through the local boards of elections regarding affidavit ballots. SBOE responded to the letter by sending a memorandum to all local county boards of elections reiterating the law with regard to affidavit ballots.  The AG's letter cannot reasonably "backup" the claims found in the three "other" factors.  The remainder of the allegations fail the general pleading standard.  <u>W. Min. Council v Watt</u>, 643 F2d 618, 624 [9th Cir 1981].  These allegations consist of exceedingly general statements about an unspecified number of voters who were allegedly told they were not registered to vote on unspecified dates.  Plaintiff alleges that further facts can be elicited through discovery.  As noted in <u>Ashcroft v Iqbal</u>, 556 US 662, 679 [2009], "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." A plaintiff must supply enough additional, independent facts "to raise a reasonable expectation that discovery will reveal evidence" of the alleged misconduct. <u>Bell Atl. Corp. v Twombly</u>, 550 US 544, 556 [2007].  Here, Plaintiff has failed to meet this standard.

### IV. Conclusion

For the reasons set forth above, Defendants request that the Court dismiss the Complaint.

| | |
|---|---|
| Albany, New York<br>January 12, 2018 | Respectfully submitted,<br>*/s/ Nicholas R. Cartagena*_____<br>Nicholas R. Cartagena, Esq.<br>William J. McCann, Jr., Esq.<br>New York State Board of Election<br>40 North Pearl Street, Suite 5<br>Albany, New York 12207<br>(518) 474-2064 |