UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
COMMON CAUSE/NEW YORK, as an
organization and on behalf of its members,

                                                        -Plaintiffs,

-against-

ROBERT A. BREHM, Co-Executive
Director, et al

                                                      -Defendants.
-----------------------------------------------------------------

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Case No. 1:17-cv-06770-AJN

Pursuant to this Court's order on June 19, 2018, ECF 54, Defendants respectfully submit this brief detailing why the Supreme Court's opinion in Husted v. A. Philip Randolph Institute requires this Court to dismiss Common Cause's complaint. 584 U.S. ___ (2018).

### I. Introduction

In upholding Ohio's system of removing voters from the official voter rolls in Husted v. A. Philip Randolph Institute, the Supreme Court concluded that the proper test of determining whether a state's process violates the National Voter Registration Act (NVRA) is *straight forward statutory construction*. In other words, when a court analyzes a state's voter removal system, the NVRA should be construed plainly, giving meaning of the statutory language and the intent of Congress. As Common Cause's claims require a reading of the NVRA that goes beyond the plain meaning of the statute and intent of Congress, such claims must be dismissed.

### II.    Husted v. Philip Randolph Background

The central question of Husted is whether the NVRA and the Help America Vote Act (HAVA) allows Ohio to use the absence of "voter activity" to trigger a voter removal process. The NVRA provides that a removal "shall not result in the removal of the name of any person ... by reason of the person's failure to vote." See 52 U. S. C. § 20507(b)(2). Additionally, under a provision in HAVA, "no registrant may be removed solely by reason of a failure to vote." See

52 USC § 21083(a)(4)(A).  The <u>Husted</u> opinion concludes that using non-voting to start the removal process does not amount to removing registrations from the rolls "solely by reason of" not voting, because there are other dispositive factors: e.g. the voter did not return a response card; the voter continued to not vote for four years; the voter did not update his or her address; etc.  As Ohio's process comported with the plain meaning and Congressional intent of the NVRA, the Supreme Court concluded that the process did not violate the NVRA.

> III.    **Common Cause's Facial Challenge Must be Dismissed Under <u>Husted</u> Because the Plain Language of the NVRA and Congressional Intent Authorizes New York's Process**

In its papers, Common Cause alleges that New York's practice of not listing "inactive" voters in poll books "facially" violates section 8 of the NVRA, arguing that "poll books" constitute the "official list of eligible voters" of which inactive voters cannot be removed prior to two federal election cycles.  <u>See</u> Compl. ¶ 53 and Pl. Memo in Opp. at 5 and 6.  Even though New York State statute provides that NYSVoter is the official list of eligible voters in New York, and not poll books, Common Cause argues that poll books should be considered the official list because holding otherwise "ignores the reality that, in New York elections, the poll books constitute the only lists of eligible voters that are available to poll workers on Election Day."  <u>See</u> Pl. Memo in Opp. at pg. 5.

Common Cause's argument requires a reading of the NVRA that expansively exceeds its plain meaning, contrary to the holding in <u>Husted</u>.  In addressing the statistics from the dissents of Justice Breyer (arguing that a very small percentage of Americans — about four percent — move outside their county each year) and Justice Sotomayor (focusing on populations who stand to be most likely to be purged under Ohio's system: minority, low-income, disabled, and veteran voters), the majority in <u>Husted</u> stated: "(t)he dissents have a policy disagreement, not just with Ohio, but with Congress.  But this case presents a question of statutory interpretation, not a

2

question of policy.  We have no authority to second-guess Congress or to decide whether Ohio's Supplemental Process is the ideal method for keeping its voting rolls up to date.  The only question before us is whether it violates federal law.  It does not."

Common Cause's argument, that poll books should be considered the official list of eligible voters, and not NYSVoter, is a policy disagreement, not a violation of the NVRA.  Common Cause obviously believes that listing inactive voters at poll sites is a better way to administer elections.  However, nothing in the language of the NVRA requires that a state to list inactive voters in poll books.   Additionally, as noted in the Memorandum in Support of the Motion to Dismiss, the legislative history of the NVRA indicates that a state may place voters in inactive status and have them vote via a provisional ballot.  See Pl. Memo in Sup. at 5 and 6.  Further, the Federal Elections Commission, the federal agency charged with interpreting the NVRA and providing states with guidance, plainly states in its "FEC Guide to Implementing the NVRA" that a state may choose not to list inactive voters in poll books.  Specifically, the Guide states:

> States must also decide whether to send the names of "inactive" voters to the polling places. Not sending them, as a cost saving strategy, might complicate and delay the fail-safe voting procedures described in Chapter 6. If they are sent, States then must decide whether they should be on a separate list or should be combined with the "active" voters using an asterisk or "I" as a designation. The decisions here are likely to be driven by the technology available to local jurisdictions.  Exhibit A, page 5-13.

New York's statutory procedure of not sending a list of inactive voters to poll sites and instead analyzing affidavit ballots' validity at the time of canvass, complies with the plain language of the NVRA and its legislative history.  Nothing in the statute contradicts or forbids this procedure.  Under Husted's plain construction test, Common Cause's facial challenge fails.

### IV. Common Cause's As-Applied Challenge Must be Dismissed Because the De Facto "Factors" listed in the Complaint Require a Reading of the NVRA Inconsistent With <u>Husted</u>

Alternatively, Common Cause argues that inactive status, in combination of certain factors, such as: (i) poll workers rarely inform "inactive" voters that they may vote by affidavit ballot; (ii) voters who are told their names are not in the poll book at their poll site often choose to leave without casting an affidavit ballot; and (iii) affidavit ballots are often not counted, constitute "de facto" removal in violation of section 8 of the NVRA.  <u>See</u> Complaint 35 and Pl. Memo in Opp. at 8.  Common Cause urges this Court to "interpret the 'official list of eligible voters' in a manner that 'enhances the participation of eligible citizens as voters.'"  <u>See</u> Pl. Memo in Opp. at 10.  Further, Common Cause suggests that this Court reject a narrow interpretation of the NVRA, citing <u>U.S. Student Ass'n Found. v. Land</u>, 546 F.3d. 373 (6th Cir. 2008).  <u>See</u> Pl. Memo in Opp. at 11.  Additionally, Common Cause suggests that not making the inactive voter list available on Election Day violates Section 8(a)(3).  <u>See</u> Pl. Memo in Opp. at 12.  All of these arguments are contrary to the analysis required under the <u>Husted</u> opinion.

In <u>Husted</u>, Justice Breyer, in his dissent, pointed to statistics showing that a very small percentage of Americans, about four percent, move outside their county each year.  Under Ohio's voter removal process, one million voters, or 13 percent of those sent the confirmation cards, did not return them.  According to Justice Breyer's dissent, "it (is) fair to assume (because of the human tendency not to send back cards received in the mail, confirmed strongly by the actual numbers in this record) the following: In respect to change of residence, the failure of more than 1 million Ohio voters to respond to forwardable notices (the majority of those sent) shows nothing at all that is statutorily significant."

The majority rejected the argument that Ohio's approach was not a reliable indicator that the voters had moved.  Specifically, the majority opinion anchored to the plain language of the

statute: "(w)hat matters for present purposes is not whether the Ohio Legislature overestimated the correlation between nonvoting and moving or whether it reached a wise policy judgment about when return cards should be sent.  For us, all that matters is that no provision of the NVRA prohibits the legislature from implementing that judgment."

Under <u>Husted</u>, plaintiff's "de facto" allegations cannot be asserted as a cause of action.  The "de facto" allegation impermissibly requires a reading of the NVRA that reaches well beyond the plain language of the law.  Common Cause advocates for a broader reading of the NVRA, arguing that this Court should interpret the "official list of eligible voters" in a manner that "enhances the participation of eligible citizens as voters."  This is contrary to the interpretive model laid out in <u>Husted</u>, where the question is whether the state's process violates the plain language of the NVRA.  Similarly, Common Cause's argument that this Court should reject a "narrow" reading of the NVRA is inapposite of <u>Husted</u>.  Lastly, as noted above, Common Cause's argument that the NVRA requires a list of inactive voters at poll sites is contrary to legislative history and FEC guidance.

Overall, nothing in the plain language of the NVRA, nor anything in the Congressional intent, supports Common Cause's "as-applied" claim.  Again, Common Cause questions the policy of New York's decision to not print the names of inactive voters in poll books.  Common Cause may disagree with this policy or think that it has a better policy in administering elections; however, as noted in <u>Husted</u>, it is not for the Courts to second guess a state's policy decisions.  Its role is to determine whether the state's policy violates the construction of the NVRA.

| | |
|---|---|
| Albany, New York<br>July 2, 2018 | Respectfully submitted,<br>*/s/ Nicholas R. Cartagena*_____<br>Nicholas R. Cartagena, Esq.<br>William J. McCann, Jr., Esq.<br>NYSBOE, 40 North Pearl Street, Suite 5<br>Albany, New York 12207 |