UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

**COMMON CAUSE NEW YORK, as an organization and on behalf of its members**,

       Plaintiff,

-against-

**ROBERT A. BREHM**, Co-Executive Director, **TODD D. VALENTINE**, Co-Executive Director, **PETER S. KOSINSKI,** Co-Chair, **DOUGLAS A. KELLNER,** Co-Chair, **ANDREW J. SPANO,** Commissioner, and **GREGORY P. PETERSON**, Commissioner, in their official capacities as Commissioners of the **NEW YORK STATE BOARD OF ELECTIONS**,

       Defendants.

------------------------------------- X

Case No. 1:17-cv-06770-AJN

# PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**INTRODUCTION**

Plaintiff Common Cause/New York ("Plaintiff") respectfully submits this Supplemental Brief in Opposition to the Motion to Dismiss by defendants the Co-Executive Directors and Commissioners of the New York State Board of Elections (collectively, "Defendants"), pursuant to the Court's order dated June 19, 2018.  Doc. 54.  The Supreme Court opinion in *Husted v. A. Philip Randolph Institute*, 584 U.S. ___, 138 S. Ct. 1833 (June 11, 2018), has no impact on Defendants' motion to dismiss because it involved the legality of a different state's statutory regime pursuant to a different provision of the federal law.  While *Husted* does not address the precise issues raised in this case, moreover, its reasoning strongly supports Plaintiff's position.

The analysis in *Husted* implicated and required the consideration of different provisions of the National Voter Registration Act and the Help America Vote Act.  *Husted* also involved a challenge to an Ohio practice that is fundamentally different from the one at issue here, a fact acknowledged by the New York Attorney General's office in the State's *amicus* brief supporting the respondents – and opposing the State of Ohio's voter purge practices – in that case.[1]  The relevant New York Election Law, both on its face and as applied, violates Section 8(d) of the NVRA both before and after *Husted*.  Defendants' motion should therefore be denied.

**I.      This Case Turns on an Analysis of Subsection (d) but the *Husted* Decision was Focused on the Failure-to-Vote Clause**

*Husted* is fundamentally different from the instant case because the Court's primary analysis hinged on whether or not Ohio's Supplemental Process violated the NVRA's "Failure-to-Vote Clause," 52 U.S.C. § 20507(b)(2), as clarified by the Help America Vote Act (HAVA),

---

[1] Brief for the States of New York, California, Connecticut, Delaware, Hawai'I, Illinois, Iowa, Kentucky, Maryland, New Mexico, Oregon, and Washington, and the District of Columbia as *Amici Curiae* Supporting Respondents at 1-2, *Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833 (2018) (No. 16-980) (hereinafter Brief for the States of New York et al.).

52 U.S.C. § 21083(a)(4)(A).  *See Husted*, 138 S. Ct. at 1841 (noting the Sixth Circuit opinion holding in respondents' favor "focused on" the failure to vote argument), 1842-46 (analyzing Ohio's Supplemental Process under the NVRA's Failure-to-Vote Clause and under HAVA).

In *Husted*, the respondents claimed Ohio violates the Failure-to-Vote Clause because the Supplemental Process is initiated by a voter's failure to "engage in voter activity" for two years. *Id*. at 1840.  Voters are then removed if they fail to vote in elections covering the next four years following the mailing of the notice card.  *Id*. at 1841.  The Plaintiffs claimed that Ohio "uses a person's failure to vote twice: once as the trigger for sending return cards and again as one of the requirements for removal."  *Id.* at 1842.  After engaging in a textual analysis of the NVRA and HAVA, *see id*. at 1843-45, and noting that "HAVA dispelled any doubt that a state removal program may use the failure to vote as a factor. . . in removing names from the list of registered voters," the majority held that Ohio is not violating the Failure-to-Vote Clause because "it removes registrants only when they have failed to vote *and* have failed to respond to a change-of-residence notice."  *Id*. at 1843 (emphasis added).  Since HAVA provided the appropriate basis for interpreting the Failure-to-Vote Clause, the majority did not consider the NVRA's legislative history.[2]  *Id*. at 1848 (observing "what is relevant in this case" is "the language of the NVRA").

Unlike Ohio's process, the New York process at issue here turns on a violation of the "two federal election cycle" mandate contained in Section 8(d), and does not implicate the Failure-to-Vote Clause or HAVA.  New York does not use the failure to vote as a trigger; it instead mandates sending a notice card if election officials receive notice of a change of address because mail addressed to the voter was returned as undeliverable, N.Y. Elec. Law § 5-712(1), or

---

[2] Defendants' interpretation of the NVRA's legislative history, Doc. 37, pp. 5-6, Doc. 55, p. 3, is incorrect.  Doc. 45, pp. 9-14 (discussing the NVRA's statutory purpose and legislative history).

-3-

through National Change of Address data. *Id*. § 5-208. The Plaintiff does not challenge New York's trigger for sending the return card notices, but instead the immediate removal of voters from Election Day poll books once those notice have been sent, without giving the voter the mandated two federal elections to prevent removal by voting. Doc. 1, ¶¶ 4-6, 30-33, 53.

## II.     Ohio Waits Four Years Before Removing Voters but New York does not

In *Husted*, it was undisputed that Ohioans were not removed within two federal elections of receiving the NVRA-required notice. 52 U.S.C. § 20507(d). Ohio removes voters' names from the poll books only after four years have passed from the day they were mailed an NVRA "return card" notice by the State. Ohio Rev. Code Ann. § 3503.21(A)(7). Ohio voters who have been sent an NVRA return card remain on the registration lists used at polling places on Election Day for at least two additional federal general elections. *Id*. § 3503.19(C)(2). By contrast, New York removes voters' names from the poll books used on Election Day beginning with the first election after the mailing of the NVRA return card.[3] N.Y. Elec. Law §§ 5-213(1)-(2).

The Supreme Court confirmed in *Husted* that this difference in timing is determinative. Justice Alito's majority opinion holds that, before removing a voter on change-of-residence grounds, a State must satisfy a "prior notice obligation" by mailing a preaddressed, postage prepaid "return card" containing certain information to the voter. *Husted*, 138 S. Ct. at 1838-39. If a voter mails the return card back and confirms that he or she has left the jurisdiction, the State must remove his or her name from the rolls (and can do so at any time). 52 U.S.C. §§

---

[3] Ironically, the New York Attorney General's *amicus* brief in *Husted* emphasizes that removing voters' names from the list used at polling places is central to the harm created by Ohio's practices. Brief for the States of New York et al. at 30-31 (noting that "erroneous deregistration can create confusion and delay at the polls" such as "a bottleneck at the check-in table that will slow the processing of voters and begin to cause back-up and lines" creating costs that are "tremendous and unduly burdensome for both voters and state and local officials") (citing Republican Nat'l Lawyers Ass'n Report at 10 (April 2014)).

20507(d)(1)(A), (3).  As the majority in *Husted* recognizes, however, the NVRA's requirements are unequivocal when voters do not mail the return card back:

> What if no return card is mailed back? Congress . . . addressed this contingency in § 20507(d), which, for convenience, we will simply call "subsection (d)." Subsection (d) treats the failure to return a card as some evidence—but by no means conclusive proof—that the voter has moved.  Instead, the voter's name is kept on the list for a period covering two general elections for federal office (usually about four years). **Only if the registrant fails to vote during that period and does not otherwise confirm that he or she still lives in the district (e.g., by updating address information online) may the registrant's name be removed.** § 20507(d)(2)(A); see §§ 20507(d)(1)(B), (3).

138 S. Ct. at 1839-40 (emphasis added).  Justice Alito repeatedly confirms that States must wait two federal election cycles before removing this group of voters.  *Id*. at 1839 n. 2 (the return card is not a "last chance notice" because "[a]ll that the voter must do is vote in any election" over a "period of four years" to avoid being stricken from the rolls); 1841 ("[f]ederal law specifies that a registration may be canceled if the registrant does not vote 'in an election during the period' covering two general federal elections after notice"); 1841-42 (holding "Ohio's Supplemental Process follows subsection (d) to the letter" because "Ohio does not remove a registrant on change-of-residence grounds unless the registrant is sent and fails to mail back a return card and then fails to vote for an additional four years."); 1848 (observing "the failure to send back the card, coupled with the failure to vote during the period covering the next two general federal elections," is determinative for change-of-residence removals under the NVRA).

Any fair application of the *Husted* Court's framework compels the conclusion that the Plaintiff has stated a cognizable claim under the NVRA in the instant Complaint.  *See* Doc. 1, ¶¶ 4-6, 30-33, 53.  Immediately removing voters who have not mailed back a return card from the list of eligible voters used at polling places on Election Day, without waiting for two federal elections to pass, is premature and violates Section 8(d).  If New York waited for two federal

elections to pass before removing inactive voters, as Ohio does, then New York would comply with the NVRA and this Court's analysis would parallel that of the Supreme Court in *Husted*.

### III.     Defendants' Reliance on the FEC's 1994 Report is Misplaced

Defendants cite to a bare assertion, unsupported by any reasoning, from a 1994 Federal Election Commission (FEC) report that carries no weight and is not entitled to any deference. Doc. 55, p. 3.  The Defendants are incorrect; the FEC is not the agency charged with interpreting the NVRA.  Congress shifted that responsibility to the Election Assistance Commission (EAC) when it enacted HAVA in 2002.  *See* 52 U.S.C. § 21132.  On its website, moreover, the EAC states that it "did not review the information [in the 1994 FEC report] for quality and does not endorse [it]."  *Publications from the former FEC Office of Election Administration*, NVRA RELATED DOCUMENTS, *available at* https://www.eac.gov/voters/nvra-related-documents/.

The report nonetheless casts serious doubt on the legality of New York's practices.  It asserts that sending return cards to all registrants "would run afoul of the provisions of the [NVRA]," in part because "many people will be designated as inactive even though they have not changed their address," which "could create serious problems at the polls on election day when they avail themselves of the fail-safe voting procedures."  Doc. 55-1, p. 5-21.  This echoes the concern about potential "delay[s]" in "the fail-safe voting procedures" pointed out by the Defendants.  *Id*. p. 5-13.  These problems occur in New York, where poll workers do not attempt to ascertain whether or not inactive voters are in fact eligible to vote, and are generally unaware that the board of elections maintains a separate list of inactive voters.  *See* Doc. 1, ¶¶ 6, 34-35.

## CONCLUSION

For the foregoing reasons, *Husted* is not relevant to this Court's analysis of Defendants' motion to dismiss, which should therefore be denied.

-7-

| | |
|---|---|
| Dated: New York, New York.<br>July 3, 2018 | Respectfully submitted,<br><br>DECHERT LLP<br><br><br>By: */s/ Neil A. Steiner*<br>　　Neil A. Steiner<br>　　1095 Avenue of the Americas<br>　　New York, NY  10036-6797<br>　　(212) 698-3500<br><br>　　*/s/ John Powers*<br>　　Ezra D. Rosenberg<br>　　John Powers<br>　　Lawyers' Committee for Civil Rights<br>　　Under Law<br>　　1401 New York Avenue, N.W., Suite 400<br>　　Washington, D.C.  20005<br>　　(202) 662-8336<br>　　erosenberg@lawyerscommittee.org<br>　　jpowers@lawyerscommittee.org<br><br>　　Jose Perez<br>　　Jackson Chin<br>　　LatinoJustice PRLDEF<br>　　99 Hudson St., 14th Floor<br>　　New York, NY 10013<br>　　(212) 219-3360<br>　　jperez@latinojustice.org<br>　　jchin@latinojustice.org<br><br>　　*Attorneys for Plaintiff*<br>　　*Common Cause/New York* |