**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

**COMMON CAUSE NEW YORK,** as an organization and on behalf of its members,

    Plaintiff,

-against-

**ROBERT A. BREHM**, Co-Executive Director, **TODD D. VALENTINE**, Co-Executive Director, **PETER S. KOSINSKI,** Co-Chair, **DOUGLAS A. KELLNER,** Co-Chair, **ANDREW J. SPANO,** Commissioner, and **GREGORY P. PETERSON**, Commissioner, in their official capacities as Commissioners of the **NEW YORK STATE BOARD OF ELECTIONS**,

    Defendants.

---------------------------------------- X

Case No.  1:17-cv-06770-AJN

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a) and this Court's October 31, 2018 Scheduling Order, Dkt. 65, Plaintiff Common Cause/New York submits this Memorandum of Law in Support of Its Motion for Leave to Amend the Complaint.

## PRELIMINARY STATEMENT

Plaintiff Common Cause/New York is the New York chapter of Common Cause, a nonpartisan grassroots organization dedicated to upholding the core values of American democracy.  It works to create open, honest, and accountable government that serves the public interest; to promote equal rights, opportunity, and representation for all; and to empower all people to make their voices heard in the political process.  Defendant New York State Board of Elections ("NYS BOE") is the governmental entity responsible for overseeing voter registration and conducting elections in New York State ("New York" or the "State").  Defendants Brehm and Valentine, are Co-Executive Directors of the NYS BOE; Defendants Peter S. Kosinski and Douglas A. Kellner are Co-Directors of the NYS BOE; and Defendants Andrew J. Spano and Gregory P. Peterson are Commissioners of the NYS BOE.

On September 6, 2017, Plaintiff filed its Complaint alleging that: (i) by placing voters in "inactive" status upon the immediate mailing of certain confirmation notices and forcing voters who receive such notices to cast affidavit ballots rather than the regular ballots cast by other voters, New York Election Law violates Section 8 of the National Voter Registration Act (the "NVRA"), 52 U.S.C. § 20507 ("NVRA Facial Challenge"); and (ii) New York's implementation of this removal policy violates Section 8 of the NVRA ("As Applied NVRA Challenge"). Dkt. 1 ¶¶ 4-11, 25-54.  On September 30, 2018, this Court dismissed Plaintiff's NVRA Facial Challenge but allowed Plaintiff's As Applied NVRA Challenge to proceed.  Dkt. 58.  Then, on

1

October 31, 2018, this Court set a deadline of November 30, 2018 for filing motions for leave to amend pleadings. Dkt. 65.

Plaintiff now seeks to amend its complaint by a claim that stems from the same underlying facts as its remaining As Applied NVRA Challenge. Specifically, the proposed Amended Complaint alleges that by (i) immediately removing eligible voters from the poll books that are used at polling locations on Election Day upon the mailing of confirmation notices, and in certain instances, without mailing any confirmation notice; (ii) requiring such eligible voters to take affirmative steps to restore their names to the poll books used at polling locations on Election Day; (iii) failing—due to wholly inadequate training of election officials—to offer all such eligible voters affidavit ballots; and (iv) failing to count the majority of affidavit ballots cast, Defendants have violated and continue to violate the Fourteenth Amendment. Exhibit A ¶¶ 62-66 to Declaration of Neil A. Steiner ("Proposed Amended Complaint" or "PAC").

## ARGUMENT

"Where, as here, a plaintiff may no longer amend the complaint as a matter of right, Rule 15(a) of the Federal Rules of Civil Procedure specifies that courts should 'freely give' leave to amend 'when justice so requires.'" *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 13 (S.D.N.Y. 2012). This is a low threshold to meet. Indeed, Rule 15 "reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated . . . and mere technicalities should not prevent cases from being decided on the merits." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (internal quotation marks omitted) (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957); *Foman v. Davis*, 371 U.S. 178 (1962)); *accord Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041 (JPO), 2015 WL 5052551, at *3 (S.D.N.Y.

Aug. 27, 2015). Therefore, "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility," a motion for leave to amend a complaint should be granted. *Monahan*, 214 F.3d at 283 (citing *Foman*, 371 U.S. at 182). This is "especially" true where, as here, "there has been no prior amendment." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), *overruled on other grounds by* 544 U.S. 197 (2005) (citing *Foman*, 371 U.S. at 182)); *accord Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (moving party need only show "at least colorable grounds for relief") (internal citation and quotation marks omitted).

Here, Plaintiff seeks to amend the complaint at a relatively early stage of the proceedings—discovery has only recently commenced and document production and depositions are yet to begin—to add an additional legal theory arising from the already pleaded facts and to include new data that has come to light since the filing of the complaint. When a party presents a proposed amendment based upon newly-available data, courts in this Circuit grant leave to amend. In fact, courts in the Circuit often allow amendments to include new facts in actions that are in significantly more advanced stages of the proceedings than here. *See, e.g.*, *Bensinger v. Denbury Res. Inc.*, No. 10-CV-1917, 2013 WL 3353975, at *4-5 (E.D.N.Y. July 3, 2013) (permitting amendment after close of discovery to reassert dismissed Section 14(a) claim on behalf of a new plaintiff with standing); *Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educ. Servs.*, No. 08-CV-367-JTC, 2011 WL 294496, at *4 (W.D.N.Y. Jan. 27, 2011) (permitting amendment after close of discovery where testimony given in discovery shed new light on previously-known facts).

### A. Plaintiff's Motion is Not Unduly Delayed

This Court explicitly gave Plaintiff until November 30, 2018 to file a motion for leave to amend its complaint. Dkt. 65 at 2. Further, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Pearlstein v. BlackBerry Ltd.*, No. 13-CV-7060 (TPG), 2017 WL 4082306, at *2 (S.D.N.Y. Sept. 13, 2017) (internal citations and quotation marks omitted). Likewise, the possibility that a "plaintiff *could have* moved to amend earlier because he had knowledge of facts underlying the proposed amendment is insufficient to demonstrate undue delay." *Id.* (emphasis in original); *see also Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) ("Simply alleging that the plaintiff could have moved to amend earlier than she did, however, is insufficient to demonstrate undue delay.").

### B. Plaintiff's Motion is Not In Bad Faith

Similarly, there is no contention, much less any evidence, of bad faith on the part of Plaintiff. For a motion for leave to amend to be denied on the basis of bad faith, there must "be something more than mere delay or inadvertence." *Primetime 24 Joint Venture v. DirecTV, Inc.*, 2000 WL 426396, at *5 (S.D.N.Y. Apr. 20, 2000). Here, Plaintiff's motion "comes early in the litigation, before substantial discovery has taken place." *Fastiggi v. Waterview Hills Nursing Ctr., Inc.*, 6 F. Supp. 2d 242, 243 (S.D.N.Y. 1998).

### C. Plaintiff's Motion is Not Unduly Prejudicial

"In determining whether a party's interests have been unduly prejudiced, the Second Circuit has instructed district courts to consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; or (ii) significantly delay the resolution of the dispute." *Randolph-Rand Corp. of New*

*York v. Tidy Handbags, Inc.*, No. 96 CIV 1829, 2001 WL 1286989, at *3 (S.D.N.Y. Oct. 24, 2001) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (internal quotation marks omitted)). Neither condition exists in the present case. First, the proposed new claim will not impose additional discovery burdens on Defendants because it "aris[es] from the same set of operative facts as the original complaint" as well as new data that is also relevant to the existing claim, *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir.1986), and "share[s] a common theme" with Plaintiff's As Applied NVRA Claim. *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 149 (E.D.N.Y. 2007). Thus, the scope of discovery will not be materially different as a result of the amended claim. That Defendants may need to expend a few more resources to respond to the Proposed Amended Complaint is insufficient to overcome the liberal standard for amendment under Rule 15. *See, e.g.*, *Primetime 24 Joint Venture*, 2000 WL 426396, at *5 ("The caselaw indicates that the additional expenditure of time or resources or the delay produced must indeed be significant to justify denying a party's request to amend its pleadings.").

Second, the addition of the new claim would not delay—let alone "significantly delay"—the resolution of this dispute. Discovery has just begun, and the trial date has not been set. *State Farm Mut. Auto. Ins. Co.*, 246 F.R.D. at 149. To date, the Parties have only recently exchanged their Rule 26 Initial Disclosures, Defendants served their first set of discovery requests yesterday, and Plaintiff served its first set of discovery requests today. Thus, any additional discovery burdens on Defendants would be minimal, which is insufficient to support a claim of undue delay. *Primetime 24 Joint Venture*, 2000 WL 426396, at *5. Regardless, there is no undue prejudice here.

### D. Plaintiff's Motion Is Not Futile

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *De Jesus v. Subway IP Inc.*, No. 16-CV-6773 (VSB), 2018 WL 3442888, at *3 (S.D.N.Y. July 17, 2018) (internal citations and quotation marks omitted). "As such, the test with respect to futility is whether the amendment states a claim upon which relief can be granted." *Id.* Here, Plaintiff has pled sufficient facts with respect to its new claim to withstand a 12(b)(6) motion.

The Supreme Court has instructed lower courts to use a balancing test to determine whether the burdens on the right to vote imposed by a State are adequately justified by the State's asserted interest in imposing that burden. *See generally Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). Specifically, courts are to "weigh 'the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for burdens imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789); *see also Obama for Am. v. Husted*, 697 F.3d 423, 433 (6th Cir. 2012).

Where a regulation or the implementation and/or enforcement thereof imposes a severe burden on the right to vote, strict scrutiny applies, and the regulation/implementation thereof must be narrowly tailored to serve a compelling state interest. *Burdick*, 504 U.S. at 434. Even where a regulation or the implementation and/or enforcement thereof creates a slight burden on the right to vote, the burden remains on the state to show that the regulation/implementation thereof is justified by a relevant state interest. *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 190-91 (2008). In determining whether a burden that is not "severe" is justified by a

relevant state interest, courts will look to the "precision" with which the state's interests are advanced by the burdensome regulation. *See League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1216 (N.D. Fla. 2018).

Plaintiff's Proposed Amended Complaint alleges facts sufficient to establish that New York's removal policy imposes a "severe" burden on the fundamental right to vote that is not narrowly tailored to a compelling state interest. *See Fish v. Kobach*, 309 F. Supp. 3d 1048, 1112–13 (D. Kan. 2018) ("[T]he evidence does not support a fit between the [law being challenged] and the State's interest . . . the evidence showed that other far less burdensome methods are available to the State."); *see also Ga. Coal. for People's Agenda, Inc. v. Kemp*, No. 1:18-CV-04727-ELR, 2018 WL 5729058, at *8 (N.D. Ga. Nov. 2, 2018).

First, the Proposed Amendment Complaint alleges that upon the mailing of certain confirmation notices, and in some circumstances without the mailing of any confirmation notice, eligible voters are (i) immediately moved to "inactive" status; (ii) removed from the poll books that are used at polling locations on Election Day; and (iii) relegated to casting an affidavit ballot.  PAC ¶¶ 2, 32-35.  Second, it alleges that eligible voters whose names are not in the poll books found at polling locations on Election Day are not even offered an affidavit ballot— leaving them disenfranchised with no recourse.  PAC ¶¶ 5, 37-38.  Third, the Proposed Amended Complaint alleges that New York's implementation of its removal policy erodes voter confidence in the State's electoral system.  PAC ¶¶ 5, 39; *see Fish*, 309 F. Supp. 3d at 1013 ("If Kansans who try to register to vote cannot be sure if they are in fact registered, particularly after they have been led to believe they complied with all registration laws, it erodes confidence in the electoral system.  If Kansans receive misinformation from State officials about whether they are registered to vote, it erodes confidence in the electoral system.  If eligible Kansans' votes are not

counted despite believing they are registered to vote, it erodes confidence in the electoral system."). Fourth, it alleges that New York's implementation of its removal policy has had a disproportionate impact on the state's most vulnerable communities. PAC ¶¶ 9-11; *League of Women Voters*, 314 F. Supp. 3d at 1216–17 ("A majority of the *Crawford* Court determined that "[i]t 'matters' in the *Anderson-Burdick* analysis . . . whether the effects of a facially neutral and non-discriminatory law are unevenly distributed across identifiable groups."); *see Ga. Coal. for People's Agenda*, 2018 WL 5729058, at *8. Finally, the Proposed Amended Complaint alleges that Defendants' public education efforts and training of local officials involved in election administration have been woefully inadequate. PAC ¶¶ 36-37; *Ga. Coal. for People's Agenda*, 2018 WL 5729058, at *11 (identifying "misleading information" and "lack of training of election officials" as creating "a very substantial risk of disenfranchisement.").

Plaintiff's Proposed Amended Complaint also alleges facts sufficient to establish that even if New York Election Law and the State's implementation thereof do not impose a "severe" burden, the State cannot meet its burden of establishing that New York Election Law and the State's implementation thereof are justified by even a relevant state interest. First, the State has offered varying justifications for its policy and its implementation thereof. PAC ¶ 3. Second, there is a more precise and less burdensome policy that the State could pass and then enforce to achieve both of the justifications that it has proposed for its current policy and the implementation thereof. PAC ¶ 4.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court grant its Motion for Leave to Amend the Complaint and permit Plaintiff to file an Amended Complaint.

Dated: November 30, 2018

Respectfully submitted,

By: /s/ Neil A. Steiner

Neil A. Steiner
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822
neil.steiner@dechert.com

Ezra D. Rosenberg
John Powers
Lawyers' Committee for Civil Rights
Under Law
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
(202) 662-8336
erosenberg@lawyerscommittee.org
jpowers@lawyerscommittee.org
(*Pro hac vice admission pending*)

Jose L. Perez
Bar No. JP0116
Joanna Elise Cuevas Ingram
Bar No. JC2704
LatinoJustice PRLDEF
99 Hudson St., 14th Floor
New York, NY 10013
Tel.: (212) 219-3360
Fax: (212) 431-4276
jperez@latinojustice.org
jcuevas@latinojustice.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on this November 30, 2018 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *Neil A. Steiner*