**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **COMMON CAUSE/NEW YORK,** as an organization and on behalf of its members,<br><br>    Plaintiff,<br><br>    v.<br><br>**ROBERT A. BREHM**, Co-Executive Director, **TODD D. VALENTINE**, Co-Executive Director, in their official capacities as Co-Executive Directors of the **NEW YORK STATE BOARD OF ELECTIONS**; and **PETER S. KOSINSKI,** Co-Chair, **DOUGLAS A. KELLNER,** Co-Chair, **ANDREW J. SPANO,** Commissioner, and **GREGORY P. PETERSON**, Commissioner, in their official capacities as Commissioners of the **NEW YORK STATE BOARD OF ELECTIONS,**<br><br>    Defendants | Case No. 1:17-cv-06770-AJN |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE</u>**

Plaintiff Common Cause/New York moves to strike the declarations of Robert A. Brehm (Dkt. 136), Thomas Connolly (Dkt. 137), and Todd D. Valentine (Dkt. 138), pursuant to Rules 701, 702, and 802 of the Federal Rules of Evidence and Rule 26(a)(2) of the Federal Rules of Civil Procedure because they are filled with hearsay testimony, improper lay opinion, and/or improper expert opinion, all of which is inadmissible at trial.

**I.   DECLARATIONS OF DEFENDANTS' TRIAL WITNESSES**

Defendants have submitted the declarations of Defendants Robert A. Brehm, the Co-Executive Director of the New York State Board of Elections (the "Board"); Thomas Connolly,

the Director of Operations of the Board; and Todd D. Valentine, the Co-Executive Director of the Board, as direct testimony in this case. The declaration of Mr. Brehm is purportedly based on his "personal knowledge as well as the books and records of the Board and discussions with its employees." Brehm Decl. ¶ 1. Similarly, the declarations of Messrs. Connolly and Valentine are supposedly based on their "personal knowledge as well as the books and records of the Board and discussions with its employees and county boards of elections." Connolly Decl. ¶ 1; Valentine Decl. ¶ 1. The declarants do not specify which portions of their declarations are allegedly based on their personal knowledge and which are based on the Board's books and records or discussions with others. Nor do they identify the books, records, employees, and counties from which they obtained the hearsay information described in their respective declarations. And none of the declarants was disclosed as an expert witness or provided expert disclosures pursuant to Rule 26(a)(2). Accordingly, the declarations of Messrs. Brehm, Connolly, and Valentine should be stricken.[1]

## II.   DISCUSSION

### A.   The Declarations Should Be Stricken Because They Constitute Hearsay and Improper Lay Opinion

Defendants have not met their burden of establishing that Messrs. Brehm, Connolly, and Valentine have personal knowledge of the matters on which they are testifying. To the contrary, they admit that their testimony is based on hearsay, such as books and records of the Board and discussions with other employees of the State Board and those of county boards of elections.

---

[1] Plaintiff identified all three witnesses as adverse witnesses they intend to call as live witnesses at trial. Thus, the appropriate remedy is either to direct Defendants to file corrected declarations limited to each witnesses' personal knowledge within twenty-four hours of the Court's order, or to direct the witnesses to appear as adverse witnesses and limit friendly cross-examination by the Defendants to matters within each witness's personal knowledge and within the scope of the adverse direct examination by Plaintiff.

Brehm Decl. ¶ 1; Connolly Decl. ¶ 1; Valentine Decl. ¶ 1.  Nor is the evidence admissible as lay opinion testimony, which would require Defendants to carry the burden of showing that:  (1) the witness has personal knowledge of the matter forming the basis of his or her opinion; (2) there is a rational connection between the opinion and the facts upon which it is based; (3) the opinion or inference is helpful to the trier of fact, either in understanding the testimony or in determining a fact in issue; and (4) the opinion is not be based on scientific, technical or other specialized knowledge.  Fed. R. Evid. 701.  Here, in addition to admitting that the witness lacks personal knowledge of the matters at issue, Defendants also contend that the testimony is based on their specialized knowledge of New York election policies and procedures.  Each of those shortcomings is independently fatal to the admissibility of the three declarations.

For example, Mr. Connolly seeks to testify that whenever "a voter who does not appear in the poll book does live in the election district, New York provides the voter with two options that are detailed on the notice to voter, vote by affidavit ballot or seek a court order," Connolly Decl. ¶ 56, and that "[t]he board of elections will open the affidavit ballot and count the ballot if the board's post-election research determines that the voter was eligible." *Id.* ¶ 62.  There is no dispute that New York Election Law mandates such processes.  But whether inactive voters actually are offered affidavit ballots and whether those affidavit ballots actually are counted are among the disputed factual issues in this case.  On that factual dispute, Mr. Connolly's testimony merely provides conclusory statements that are inadmissible because they are not based on his personal knowledge.  Likewise, Mr. Connolly provides speculative and hearsay testimony at paragraphs 76 through 78 of his declaration.  For example, he claims that "from the poll workers' perspective" the affidavit process is simple.  *Id.* ¶ 78.

Indeed, none of the declarations specify which portions are actually based on personal knowledge. The entirety of the declarations should therefore be stricken. *See Wechsler v. Hunt Health Sys., Ltd.*, 198 F. Supp. 2d 508, 526-27 (S.D.N.Y. 2002) (citing *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *cert. denied*, 528 U.S. 965 (1999) (observing that a court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."); *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 558-61 (7th Cir. 2008) (CEO had no personal knowledge of value of collateral and could not offer lay testimony concerning value); *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 25 (1st Cir. 2001) (finding that district court properly excluded sales manager's lay opinion regarding lost profits because it was not based on personal knowledge or relevant data, but rather was based on generalized knowledge of worldwide market).

At best, the declarations contain boilerplate language that each declarant is "fully familiar with the facts and circumstances set forth." Brehm Decl. ¶ 1; Connolly Decl. ¶ 1; Valentine Decl. ¶ 1. However, being "familiar" with facts is not a substitute for personal knowledge. The Court should strike such generalized and conclusory statements. *See Wechsler*, 198 F. Supp. 2d at 526-27 (a court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements.").

Statements are especially questionable where they are in direct conflict with the declarant's prior deposition testimony. For example, as demonstrated below, during Mr. Brehm's deposition, he stated several times that he was not aware of the purpose served by removing inactive voters from the poll books or forcing such voters to vote an affidavit ballot. Yet his declaration now

describes at length the purported legislative history that supposedly shows the state interest in such requirements. *See infra* Part B.

### B. Testimony Regarding the Purported Policy Rationale of New York's Removal Process Should Be Stricken

In Paragraphs 2 through 17 of Mr. Brehm's declaration, he opines on the purported state interest justifying New York's removal of inactive voters from the poll ledger. This testimony is in direct conflict with Mr. Brehm's deposition testimony, in which he admitted that he does not know the purpose of removing names of inactive voters from poll books.

> Q….[I]s there any other purpose for not including the inactive voters in the poll ledger?
> …
> A. I don't recall why at the time they did that. Other than the legislature passed a law and we followed the law. I don't know why the legislature came to that conclusion.
> …
> Q. Are there any other reasons [for removing inactive voters] other than … to follow the law?
> A. Well, that's a pretty good one. So I don't know what went into thinking at the time as to – certainly being on inactive status and dealing with issues in a poll site poll site dynamic is in itself a number of challenges throughout the day. This is just one of them. So I don't know, there must have been a weighing of the issues that made a decision not to include them. I don't know the reason though."

Brehm Dep. Tr. at 51:5-52:21. Mr. Brehm does not say whether the new testimony in his declaration is based on his personal knowledge, his review of documents, or his conversations with others.

Paragraphs 13 and 16 of Mr. Brehm's declaration likewise constitute hearsay evidence that should be excluded. The paragraphs describe statements made on "the Brian Lehrer Show" on WNYC radio station and in an article from the Albany Times Union, and they are being offered for the truth of the matters asserted. Paragraphs 15 and 17 of Mr. Brehm's declaration purport to describe what the Legislature and Governor supposedly knew in 1994 and their decision-making

5

process with respect to the inactive voter removal laws. Here, too, as Mr. Brehm seeks to provide opinion testimony on a subject that is beyond his ken of knowledge and for which he has provided no basis. It must be stricken. *Wechsler*, 198 F. Supp. at 526–27 (court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) (stating that "[i]nferences about the intent or motive of parties or others lie outside the bounds of [even] expert testimony").

### C. Testimony Regarding Analysis of Purported Reasons for Inactive Voters Should Be Stricken

Paragraphs 18 through 26 of the Brehm Declaration (under the section entitled "A Vast Majority of Inactive Voters are Inactive Because the Voter Has Moved or Changed Residence") should be stricken because they constitute improper hearsay. Mr. Brehm briefly mentions that the Board conducts an annual statistical survey, *see* Brehm Decl. ¶ 18, but that survey does not identify the reason a voter becomes inactive nor does Mr. Brehm rely on it for that purpose. Rather, Mr. Brehm appears to base his conclusion solely on a handful of text messages from voters produced by Plaintiff Common Cause/New York. Not only are the statements contained in these text messages hearsay, but these responses to a text message from a small subset of inactive voters is a woefully insufficient basis to draw a statistically sound conclusion, which would require Mr. Brehm to provide an expert opinion in any event. *See*, *e.g.*, *N.C. State Conf. of the NAACP v. McCrory*, 182 F. Supp. 3d 320, 383-84 (M.D.N.C. 2016), *rev'd on other grounds*, 831 F.3d 204 (4th Cir. 2016) (discussing expert opinion of Dr. Paul Gronke and Dr. Barry Burden concerning the impact of early voting on voter turnout).

Similarly, in paragraph 26 of his declaration, Mr. Brehm summarily concludes that – based on his experience as Commissioner of Schenectady County Board of Elections over a decade ago

6

– he has "observed that a clear majority of inactive voters have, in fact, moved." This opinion is not relevant or based on any reliable facts or data. *See* Fed. R. Evid. 703; *see also Wechsler*, 198 F. Supp. 2d at 526-27 (A court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."). Even if Mr. Brehm's testimony was not based upon hearsay, it would be impermissible opinion testimony because he has not described the research methods or other methodology on which he based his analysis, and the bases on which he relied are incomplete and insufficient.

### D.  Testimony Regarding Voting Costs Should Be Stricken

Paragraphs 27 through 35 of the Brehm Declaration (entitled "Voting Costs") also consists primarily of expert opinion on what is referred to in the relevant field as "voting costs." Mr. Brehm opines, among other things, that printing voters' names in poll books will do little to increase voter turnout in New York State. This testimony, which Brehm claims is based on his "experience," Brehm Decl. ¶¶ 27, 35, requires technical and specialized knowledge regarding the cost of voting regulations and the resulting impact on voter turnout. *See*, *e.g.*, *id*. ¶ 29 (opining that the "voting cost" of requiring inactive voters to use an affidavit ballot "is not significant, especially in relation to the policy goal of ensuring that voters are voting in the correct election jurisdiction"), ¶ 34 (opining that "there is not one magic proposal that will dramatically increase voter turnout in New York State").

Testimony based upon professional knowledge and experience is plainly expert testimony. *Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 561 (7th Cir. 2008) ("Testimony based solely on a person's special training or experience is properly classified as expert testimony."); *Chef'n Corp. v. Trudeau Corp.*, No. C08-01135 MJP, 2009 WL 1564229, *2 (W.D. Wash. June 4, 2009)

(holding that lay testimony based on general, professional knowledge of the kitchen product market was undisclosed expert testimony). Because Mr. Brehm was not disclosed as an expert and did not provide expert disclosures as mandated by the Federal Rules of Civil Procedure and the scheduling order entered in this action, he cannot offer expert testimony. *See* Fed. R. Civ. P. 26(a); Dkt. 92 ¶ 9. If an expert witness is not properly disclosed, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In this case, issues related to voter registration and turnout are within the realm of expert testimony. *See*, *e.g.*, *Frank v. Walker* 17 F. Supp. 3d 837, 875 (E.D. Wis. 2014), *rev'd on other grounds*, 768 F.3d 744 (7th Cir. 2014) (discussing testimony "under the dominant framework used by scholars to study voter turnout, even small increases in the costs of voting can deter a person from voting, since the benefits of voting are slight and can be elusive"); *ACORN v. Bysiewicz*, 413 F. Supp. 2d 119, 131 (D. Conn. 2005) (discussing New York University Professor Jonathan Nagler's testimony concerning historical voter turnout patterns nationally and in Connecticut); *France v. Pataki*, 71 F. Supp. 2d 317, 322 (S.D.N.Y. 1999) (discussing Dr. Ronald Weber's testimony concerning "voter registration and voter turnout differences" between racial groups); *see also Rodriguez v Pataki*, 308 F. Supp. 2d 346, 379-380 (S.D.N.Y. 2004) (discussing similar testimony from Dr. Michael McDonald). The United States Supreme Court has noted that such testimony can require sophisticated analyses that can be challenging for experts, let alone lay witnesses lacking any technical expertise in mathematical or political science disciplines. *See Bartlett v. Strickland*, 556 U.S. 1, 17 (2009) (noting "predictions" and "premises that even experienced polling analysts and political experts could not assess with certainty, particularly over the long term," including "[w]hat are the historical turnout rates among white and minority voters

and will they stay the same?"). Mr. Brehm's conclusions in this area are even more dubious in light of his interest in the litigation as a party.

### III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court strike the declarations of Robert A. Brehm (Dkt. 136), Thomas Connolly (Dkt. 137), and Todd D. Valentine (Dkt. 138).

Dated: October 2, 2019

Respectfully submitted,

/s/ *Anna Do* _
Anna Do (*pro hac vice*)
DECHERT LLP
633 West 5th Street, Suite 4900
Los Angeles, CA  90071
(213) 808-5700
anna.do@dechert.com

Neil A. Steiner
1095 Avenue of the Americas
New York, NY 10036
(212) 891-9418
neil.steiner@dechert.com

Hilary Bonaccorsi (*pro hac vice*)
100 Oliver Street, 40th Floor
Boston, MA 02129
(617) 728-7153
hilary.bonaccorsi@dechert.com

Tharuni Jayaraman (*pro hac vice*)
1900 K Street NW
Washington, DC  20006
(202) 261-3420
tharuni.jayaraman@dechert.com

Ezra Rosenberg (*pro hac vice*)
John Powers (*pro hac vice*)
Ryan Snow (*pro hac vice*)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street, N.W., Suite 900
Washington, D.C.  20005
(202) 662-8336
erosenberg@lawyerscommittee.org
jpowers@lawyerscommittee.org
rsnow@lawyerscommittee.org

Jackson Chin
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901,
New York, New York 10115
(212) 219-3360
jchin@latinojustice.org

*Attorneys for Plaintiff*
*Common Cause/New York*
