**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **COMMON CAUSE/NEW YORK**, as an organization and on behalf of its members,<br><br>    Plaintiff,<br><br>    v.<br>**ROBERT A. BREHM**, Co-Executive Director, **TODD D. VALENTINE**, Co-Executive Director, in their official capacities as Co-Executive Directors of the **NEW YORK STATE BOARD OF ELECTIONS**; and **PETER S. KOSINSKI,** Co-Chair, **DOUGLAS A. KELLNER,** Co-Chair, **ANDREW J. SPANO,** Commissioner, and **GREGORY P. PETERSON**, Commissioner, in their official capacities as Commissioners of the **NEW YORK STATE BOARD OF ELECTIONS,**<br><br>    Defendants. | CIVIL ACTION NO.<br><br>1:17-cv-06770-AJN<br><br>_____ |

**<u>PLAINTIFF'S POST-TRIAL REPLY BRIEF</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................... 1

I.     NEW YORK'S REGIME DOES NOT PASS ANDERSON-BURDICK SCRUTINY ................................................................................................................... 2

II.    NEW YORK IMPOSES A SEVERE BURDEN ON INACTIVE VOTERS .............. 4

    A.    The Scope of Affected Voters is Substantial ........................................................... 4

    B.    Defendants Mischaracterize Witness Statements Regarding Voters Who Have Moved and are Returning to Their Old Polling Place ................................... 5

    C.    Defendants Falsely Assert Other Laws Mitigate Burdens on Inactive Voters ........................................................................................................................ 5

    D.    Defendants Misrepresent Plaintiff's Evidence, Including Voter Witnesses .......... 6

III.   DEFENDANTS HAVE NOT IDENTIFIED A LEGITIMATE STATE INTEREST ............................................................................................................................ 6

    A.    Affidavit Ballots Do Not Help Inactive Voters Vote at the Correct Location ........................................................................................................................ 7

    B.    The Regime Does Not Help Voters Cast Ballots at the Correct Location ............. 7

    C.    Defendants Do Not Contest Plaintiff's 50 State Analysis ..................................... 7

IV.   NEW YORK'S REGIME DOES NOT PREVENT VOTER FRAUD ......................... 8

V.    PLAINTIFF PROVED A 'SYSTEMIC' FAILURE TO OFFER AFFIDAVIT BALLOTS BUT THAT IS NOT THE STANDARD UNDER THE NVRA ............... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**CASES**

*Action NC v. Strach*,
   216 F. Supp. 3d 597 (M.D.N.C. 2016) ....................................................................................9

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ....................................................................................................................8

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ................................................................................................................2

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ..............................................................................................................10

*Crawford v. Marion Cty. Election Bd.*,
   553 U.S. 181 (2008) ................................................................................................................2

*Democratic Exec. Comm. of Fla. v. Lee*,
   915 F.3d 1312 (11th Cir. 2019) ...........................................................................................6, 9

*Ga. Coal. for the People's Agenda, Inc. v. Kemp*,
   347 F. Supp. 3d 1251 (N.D. Ga. 2018) ...................................................................................3

*Green Party of N.Y. State v. N.Y. State Bd. of Elections*,
   389 F.3d 411 (2d Cir. 2004) ................................................................................................3, 9

*Griffin v. Roupas*,
   385 F.3d 1128 (7th Cir. 2004) .................................................................................................3

*Husted v. A. Philip Randolph Institute*,
   138 S.Ct. 1833 (2018) .........................................................................................................2, 3

*Marston v. Lewis*,
   410 U.S. 679 (1973) ................................................................................................................2

*McDonald v. Bd. of Elections Comm'rs of Chicago*,
   394 U.S. 802 (1969) ................................................................................................................2

*Ne. Ohio Coal. for Homeless v. Husted*,
   696 F.3d 580 (6th Cir. 2012) ...............................................................................................3, 9

*Nixon v. Shrink Mo. Gov't PAC*,
   528 U.S. 377 (2000) ................................................................................................................8

*Ohio Council 8 Am. Fed'n of State v. Husted*,
   814 F.3d 329 (6th Cir. 2016) ...................................................................................................3

*Rosario v. Rockefeller*,
    410 U.S. 752 (1973) ................................................................................................. 3

*Smith v. Salt River Project Agric. Improvement & Power Dist.*,
    109 F.3d 586 (9th Cir. 1997) ..................................................................................... 8

*Stone v. Bd. of Election Comm'rs for Chicago*,
    750 F.3d 678 (7th Cir. 2014) ..................................................................................... 3

*United States v. Louisiana*,
    196 F. Supp. 3d 612, 673-74 (M.D. La. 2016), *vacated due to voluntary*
    *dismissal*, 2017 WL 4118968 (Aug. 21, 2017) ...................................................... 10

**STATUTES**

52 U.S.C. § 20510(b) (2019) ............................................................................................ 10

OHIO REV. CODE ANN. § 3503.21(B) ................................................................................ 3

**OTHER AUTHORITIES**

U.S. ELECTION ASSISTANCE COMMISSION, ELECTION CRIMES: AN INITIAL REVIEW
    AND RECOMMENDATIONS FOR FUTURE STUDY 11 (DEC. 2006),
    HTTPS://TINYURL.COM/T8OT2AG .............................................................................. 8

# INTRODUCTION

Plaintiff has proven New York's policies severely burden tens of thousands of eligible voters by omitting their names from poll books and forcing them to cast affidavit ballots based on a single piece of returned mail—even though these "inactive" voters continue to live at the same address. Notably, the State does not dispute that New York is one of only three states that take such extreme action. In the face of compelling evidence that the Postal Service is unreliable as a gatekeeper of the fundamental right to vote and that New York's regime imposes heavy burdens, the State admits that "errors occasionally occur," but argues that its procedures pass constitutional muster because elections are inherently not "perfect," and impacting tens of thousands of voters does not trigger heightened scrutiny. *See* Dkt. 181 at 39.

Defendants suggest that the burdens imposed are necessary to further an important state interest. However, they cannot identify an interest that is legitimate, let alone compelling. Post-trial, Defendants allege for the first time that its regime is necessary to combat "voter fraud"—without identifying the "fraud" addressed by the policies at issue. Defendants again make the implausible argument that keeping inactive voters out of the poll books helps them find the correct polling place. The State also suggests that forcing eligible inactive voters who have not moved to cast affidavit ballots helps them vote in the right location—even though more than 35,000 affidavit ballots were rejected in the November 2016 election precisely for being cast in the wrong location. Affidavit ballots do not ensure that voters only cast ballots where they are eligible because the only effort to investigate eligibility involves comparing the address provided in the affidavit with the address listed in the voter file. Ultimately, the State ignores Second Circuit precedent, mischaracterizes the relevant case law, and seeks to apply new burdens of proof that no court has ever required and that no plaintiff could ever satisfy.

## I. NEW YORK'S REGIME DOES NOT PASS *ANDERSON-BURDICK* SCRUTINY

Plaintiff's post-trial brief lays out the appropriate standard under the *Anderson-Burdick* test. *See* Dkt. 180 at 10, 13, 15-18 (addressing burden), 21-23, 27, 33 (addressing state interest), 34 (addressing remedy). Defendants mischaracterize or inappropriately analogize to a series of inapposite cases that have no bearing on Plaintiff's fundamental right to vote claim.

Defendants' claim that the Supreme Court has upheld "many" election rules that are "far more burdensome than the laws challenged here," Dkt. 181 at 25, is inaccurate and misleading. They cite five cases, of which only two—*Burdick v. Takushi*, 504 U.S. 428 (1992), and *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181 (2008)—actually apply the *Anderson-Burdick* test. *Crawford* is inapposite because the plaintiffs in that case brought a pure facial challenge, did not provide evidence that any voters had faced difficulties voting or were disenfranchised due to Indiana's photo ID requirement, and submitted an unreliable expert report that was discredited by the trial court. *See id.* at 200-04.

Similarly, Hawaii's ban on the write-in ballots at issue in *Burdick* did not cause voter confusion, increase wait times, disenfranchise voters, or otherwise burden voting. 504 U.S. at 437-38 (plaintiff claims he is entitled to cast a vote for Donald Duck). *Marston v. Lewis*, 410 U.S. 679 (1973) and *McDonald v. Bd. of Elections Comm'rs of Chicago*, 394 U.S. 802 (1969), involve equal protection challenges brought long before the advent of the *Anderson-Burdick* test.

*Husted v. A. Philip Randolph Institute*, 138 S.Ct. 1833 (2018) does not involve a constitutional claim; the plaintiffs challenged whether Ohio could use the failure to vote as a basis for sending a confirmation notice. *See id.* at 1838. Notably, unlike here, inactive voters in Ohio remain in the poll book and are eligible to cast a regular ballot for two federal election cycles after being mailed the notice. *See id.* at 1841; OHIO REV. CODE ANN. § 3503.21(B).

*Husted* is therefore irrelevant to Plaintiff's constitutional claim and its National Voter Registration Act ("NVRA") claim.

Defendants' other authorities are equally outdated and irrelevant. They cite *Rosario v. Rockefeller*, 410 U.S. 752 (1973) to suggest that "procedural rules related to voting" are reviewed more leniently than "voter qualification laws." *See* Dkt. 181 at 14. *Rosario*, however, is a pure equal protection case decided long before the *Anderson-Burdick* test was created. *See* 410 U.S. at 756-57. The *Anderson-Burdick* test is uniformly applied to all election statutes including, among others, those involving ballot access, *see*, *e.g.*, *Green Party of N.Y. State v. N.Y. State Bd. of Elections*, 389 F.3d 411 (2d Cir. 2004), requirements for voting on Election Day, *see*, *e.g.*, *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580 (6th Cir. 2012), and registration requirements, *see Ga. Coal. for the People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251 (N.D. Ga. 2018).

Defendants discuss *Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004), at length to support the notion that laws "disallow[ing] some attempted ballots" are constitutionally permissible. Dkt. 181 at 21. *Griffin*, however, merely affirmed the granting of a motion to dismiss and did not discuss the *Anderson-Burdick* test and instead observed that the plaintiffs were asking for "absentee voting at will." 385 F.3d at 1129-31 (noting plaintiffs were "arguing that the Constitution requires all states to allow unlimited absentee voting"). *Griffin* did not involve any evidence of disenfranchisement or burdens to voters. *See id*. at 1130. Likewise, the nonpartisan judicial elections at issue in *Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329 (6th Cir. 2016), Dkt. 181 at 23-24, and the petition requirement for mayoral candidates at issue in *Stone v. Bd. of Election Comm'rs for Chicago*, 750 F.3d 678 (7th Cir. 2014), imposed, at most, minimal burdens.

Defendants assert, without citation, that Plaintiff must demonstrate "systemic error" to prevail. That is simply not the law. As demonstrated in the opening brief, New York's regime must be analyzed under the *Anderson-Burdick* test from the perspective of the tens of thousands of affected inactive voters. *See* Dkt. 180 at 15-17. New York's inactive voter laws cannot stand because they impose severe burdens, and New York's laws do not advance any state interest.

## II.   NEW YORK IMPOSES A SEVERE BURDEN ON INACTIVE VOTERS

### A.   The Scope of Affected Voters is Substantial

The number of inactive voters who are inappropriately burdened by New York's laws is substantial, Dkt. 179 ¶¶ 189-198, 210-212, and all voters are impacted due to increased wait times, *id.* ¶¶ 199-209. Defendants seek to minimize these burdens by contending "Plaintiff's expert estimates that roughly 30,000 [are] still living in the same address." Dkt. 181 at 9. There can be no dispute that 30,000 affected voters—representing 3% of all inactive voters in New York—is substantial. Moreover, Dr. Meredith explained that between 30,000 and 37,000 inactive voters who had not moved cast affidavit ballots in the November 2016 election. Trial Tr. (Vol. III) 324:16-325:9 (M. Meredith); *see also* Ex. P265, Meredith Supp. Decl. ¶ 3. That number does not include inactive voters who have not moved but did not vote or who cast an affidavit that was rejected. *See* Trial Tr. (Vol. III) 326:3-327:8, 354:1-355:2 (M. Meredith).

Defendants also inaccurately assert "no one responded that they had not moved" when Plaintiff texted inactive voters in 2018. Dkt. 181 at 9. Mr. Brehm, however, admitted the contrary. Ex. A, Brehm Decl., ¶ 21. Moreover, inactive voters constitute only a portion of the voters who were texted. Trial Tr. (Vol. II) 212:12-25 (S. Lerner), 257:7-17 (R. Brehm); Ex. P237, Lerner Decl., ¶ 16 (CCNY sent "text messages to young voters to remind them to register and to vote"). Mr. Brehm's testimony as to the number of inactive voters who responded to

4

Plaintiff's texts is unreliable; he relied on unnamed staffers and did not claim that he actually reviewed the 250,000 text messages. Trial Tr. (Vol. II) 256:3-13 (R. Brehm); Ex. A, Brehm Decl., ¶¶ 19-24.

### B. Defendants Mischaracterize Witness Statements Regarding Voters Who Have Moved and are Returning to Their Old Polling Place

Defendants' assertions that "as Michael Ryan has testified, and Susan Lerner, Executive Director of Plaintiff, has confirmed, voters often will go back to their old polling sites after they have moved," Dkt. 181 at 10, 31, are misleading at best. Mr. Ryan discussed *active* voters who have moved but return to their old polling place and vote on the "scanner." Ex. P263, Ryan Dep. 90:2-16. Mr. Ryan explained that the affidavit ballot procedures have no effect on those voters and that there is "nothing that we can do . . . to police" them because "[w]e rely on voters to tell us where they are and where they should vote." *Id*. Ms. Lerner testified that such voting "does occur," but not that it happens "often," let alone by inactive voters. *See* Trial Tr. (Vol. II) 221:21-222:2 (S. Lerner). She added that she actively discourages voters from doing so. *Id*.

### C. Defendants Falsely Assert Other Laws Mitigate Burdens on Inactive Voters

Defendants assert burdens on inactive voters are mitigated because poll workers consult a map or street finder to look for voters' correct polling place, post flyers concerning affidavit ballots, and give voters a notice to voter form. Dkt. 181 at 18-19, 32. These provisions, including the street finder, do not prevent the confusion experienced by voters who have not moved from their address of registration, are appearing at the correct polling place, and do not find their name in the poll book. *See* Ex. P264, Meredith Decl., at 21-22; Ex. P204, Wolfe Decl., ¶¶ 10-14; Ex. P195, Holman Decl., ¶¶ 14-22. Moreover, Mr. Valentine confirmed there is no requirement that poll workers call election officials to verify their registration status and cannot ascertain why voters are not in the poll book. Trial Tr. (Vol. I) 150:22-151:18 (T. Valentine).

5

### D. Defendants Misrepresent Plaintiff's Evidence, Including Voter Witnesses

Defendants' attempts to minimize the testimony of the voter witnesses as "localized issues," *see* Dkt. 181 at 36-39, deserve little weight. Election administrators, Ms. Lerner, and Plaintiff's experts all explained that the problems in New York are widespread. In any event, "even one disenfranchised voter . . . is too many." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1321 (11th Cir. 2019) (quoting *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014)). The claim that the declarations of Baldus, Fages, Lavnick, Wilson, Johnson, Goldblum, Stewart, and Holman demonstrate "precisely how the process is supposed to work," Dkt. 181 at 37, reflects an unfortunate disregard for the hardships these voters experienced and the potential downwind effects on voting. *See* Dkt. 179 ¶¶ 253-54.

Similarly, Defendants falsely claim only one voter was not offered an affidavit ballot, ignoring the significant body of evidence put forward by Plaintiff on this precise subject. *See, e.g.*, Dkt. 179 ¶¶ 119-137; *see also* Dkt. 180 at 37-38. Defendants also misapprehend the testimony concerning Denise Roberts; if Plaintiff's requested relief had been in place, Ms. Roberts would have been able to vote a regular ballot that counted. Trial Tr. (Vol. III) 358:7-11 (M. Meredith) (court's question refers to being "listed at the polling place"), 356:19-357:2 (discussing Ms. Roberts in the context of problems with processing affidavit ballots).

Defendants also deride certain evidence as "hearsay" and "hearsay within hearsay," ignoring that some exhibits were admitted and, in any event, experts like Dr. Meredith can rely on hearsay. Trial Tr. (Vol. III) 356:1-19 (M. Meredith) (relying on NY AG and NYC reports).

### III. DEFENDANTS HAVE NOT IDENTIFIED A LEGITIMATE STATE INTEREST

Plaintiff has already demonstrated that the state interests asserted by Defendants are not actually served by omitting inactive voters' names from poll books and forcing them to cast affidavit ballots. *See* Dkt. 180 at 20-30. The State offers no evidence to the contrary.

### A.     Affidavit Ballots Do Not Help Inactive Voters Vote at the Correct Location

The State claims that forcing inactive voters to cast affidavit ballots helps them to vote at the right location. Dkt. 181 at 26-27. Defendants repeatedly and misleadingly quote Michael Ryan in an attempt to buttress this argument. *See id.* at 8, 27, 31. However, Mr. Ryan's testimony relates to (1) active voters and (2) voters who recently moved and are casting affidavit ballots at polling places that are not associated with their address of registration, neither of whom will be affected by this case. *See* Ex. P263, Ryan Dep. 89:15-22, 90:2-16. Poll workers already ask voters where they live under current law, and the evidence does not include a single example where the affidavit ballot process prevented someone from voting at an incorrect location. *See* Dkt. 180 at 26-27, 30-31; *see also* Trial Tr. (Vol. III) 366:20-367:8, 367:9-18 (M. Meredith).

### B.     The Regime Does Not Help Voters Cast Ballots at the Correct Location

New York's existing regime, which includes the affidavit process for inactive voters, does an incredibly poor job of helping voters cast ballots at the correct place. Approximately 35,500 affidavit ballots were rejected in New York in the 2016 general election for being cast in the incorrect polling location. Ex. P265, Meredith Supp., Decl., ¶ 5. That number is greater than the *total* number of provisional ballots rejected in that election in North Carolina (33,756), Arizona (23,959), Ohio (22,978), and most other states. *See* Ex. P264, Meredith Decl., at 17

### C.     Defendants Do Not Contest Plaintiff's 50 State Analysis

In response to the Court's query at closing argument, Plaintiff submitted an analysis of the procedures for inactive voters in all 50 states, which confirms that only two states—Alaska and Mississippi—exclude inactive voters from polling places and force inactive voters to cast provisional ballots. *See* Dkt. 180-2, App. B (50 State Survey). The State does not dispute this analysis, which confirms New York's procedures are an extreme outlier. Moreover, Defendants

7

do not explain why the same interests cannot be satisfied by allowing inactive voters to complete an affidavit while still casting a regular ballot. At least fourteen states employ such an approach—Alabama, Arizona, Delaware, Georgia, Kentucky, Louisiana, Maryland, Massachusetts, New Jersey, Oklahoma, Rhode Island, South Dakota, Tennessee, and Texas—while others allow for oral confirmation (Missouri, North Carolina, Virginia, West Virginia). *Id.*

## IV. NEW YORK'S REGIME DOES NOT PREVENT VOTER FRAUD

Desperate to identify a legitimate state interest, Defendants argue—for the first time in their post-trial brief—that the policy at issue prevents voter fraud. *See* Dkt. 181 at 27-28. But Defendants produced no evidence of voter fraud at trial, and there is no indication that it occurs in New York. *See id*. at 28. In fact, the word "fraud" was not uttered once during the four days of trial. *See* Trial Tr. Vols. I-IV. Not surprisingly, Defendants do not identify any fraud addressed by excluding inactive voters' names from poll books or forcing them to cast affidavit ballots, particularly because inadvertently going to the wrong polling location is indisputably not fraud. *See* U.S. Election Assistance Commission, *Election Crimes: An Initial Review and Recommendations for Future Study* 11 (Dec. 2006), https://tinyurl.com/t8ot2ag (defining voter fraud).

Defendants instead, relying on *Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377 (2000), claim that invoking the mere theoretical possibility of voter fraud, without any proof, is sufficient. That is not the law—even under *Nixon*. *See id.* at 391.[1] To the contrary, Defendants

---

[1] *Nixon* was not a right to vote case but instead concerned the First Amendment implications of regulating campaign contributions—an entirely separate set of inquiries from the *Anderson-Burdick* test. *See id.* at 382-83, 399. The *Nixon* Court found that there was plenty of evidence of corruption and illegal contributions justifying the contribution limits at issue, dating back to *Buckley v. Valeo*, 424 U.S. 1 (1976). *See id.* at 391. Defendants' discussion of *Smith v. Salt River Project Agric. Improvement & Power Dist.*, 109 F.3d 586 (9th Cir. 1997), Dkt. 181 at 20—a Section 2 Voting Rights Act case, *id.* at 591-592—is likewise irrelevant.

must establish a "meaningful relationship" between the interests asserted and the practices at issue under *Anderson-Burdick*. *Green Party of N.Y. State*, 389 F.3d at 421; *see also Democratic Exec. Comm. of Fla.*, 915 F.3d at 1322 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)) ("We must take into consideration not only the "legitimacy and strength" of the state's asserted interest, but also "the extent to which those interests make it *necessary* to burden" voting rights); *Ne. Ohio Coal. for Homeless*, 696 F.3d at 596 (rejecting argument that remedy "will increase the number of voters attempting to cast votes at the wrong polling location or facilitating voter fraud").

## V. PLAINTIFF PROVED A 'SYSTEMIC' FAILURE TO OFFER AFFIDAVIT BALLOTS BUT THAT IS NOT THE STANDARD UNDER THE NVRA

Plaintiff has proven that poll workers routinely fail to offer affidavit ballots to voters, creating a "systemic" problem across New York. *See* Dkt. 179 ¶¶ 119-137; *see also* Dkt. 180 at 37-38. That evidence far exceeds the minimum legal requirement for proving an as-applied violation of the NVRA. The State incorrectly suggests that Plaintiff must demonstrate "systemic, rather than localized, problems" based on language from the Court's decision on the motion to dismiss. *See* Dkt. 181 at 7, 34-35. That assertion is baseless because, in the portion of the decision cited by Defendants, the Court was reciting Plaintiff's own allegations and was not setting forth any rule of law. *See* Dkt. 58 at 25 (stating "Plaintiff argues that New York engages in 'de facto removal' in violation of Section 8 based on its allegations that . . ."). Indeed, the portion of the decision describing the substance of the as-applied claim does not mention "routine" or "systemic" violations. *See id.* at 26-27.

Other as-applied NVRA cases, including those previously cited by Plaintiff, confirm that the NVRA is a strict liability statute. *See* Dkt. 180 at 35-36; *Action NC v. Strach*, 216 F. Supp. 3d 597, 638 (M.D.N.C. 2016) (defendants "failed to transmit voter registration applications as

9

required by the NVRA" based on "40 individual violations" even though "the evidence, taken as a whole," did not "show a wholesale failure on the part of the DMV"); *see also United States v. Louisiana*, 196 F. Supp. 3d 612, 673-74 (M.D. La. 2016) (rejecting proposed "substantial compliance" standard and stating "this Court reads Section 7 to prescribe strict compliance with its commands, finding no support for any other standard in the NVRA's plain and unambiguous language"), *vacated due to voluntary dismissal*, 2017 WL 4118968 (Aug. 21, 2017).

Defendants cite *City of Canton v. Harris*, 489 U.S. 378 (1989) for the proposition that Plaintiff must establish a "systemic, rather than localized, problems" to succeed on its NVRA claim. Dkt. 181 at 35. *City of Canton*, however, did not even involve elections; it concerned the alleged "failure to train" municipal police officers under 42 U.S.C. § 1983. 489 U.S. at 387-88. It is thus irrelevant to Plaintiff's statutory NVRA claim under Section 8.

Finally, the fact that this case does not include an individual voter plaintiff does not affect Plaintiff's burden of proof on the NVRA claim or its standing to bring that claim. *See* 52 U.S.C. § 20510(b) (2019) (permitting any "aggrieved person" to "bring a civil action . . . for declaratory or injunctive relief with respect to [a] violation" and failing to differentiate between types of private plaintiffs); *see also* Dkt. 180 at 39-41.

## CONCLUSION

For the foregoing reasons and those in Plaintiff's opening brief, Plaintiff Common Cause/New York respectfully requests that the Court enter judgment in its favor on all claims and enjoin the State Board of Elections from removing inactive voters from the poll book used on Election Day and forcing inactive voters to vote by affidavit ballot.

Dated: New York, New York
       November 25, 2019

Respectfully submitted,

/s/ *Neil A. Steiner*
**DECHERT LLP**
Neil A. Steiner
Katherine Shorey (*pro hac vice*)
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone: 212-891-9418
Fax: 212-891-9598

Anna Do (*pro hac vice*)
633 West 5th Street
Suite 4900
Los Angeles, CA 90071
Telephone: 213-808-5700
Fax: 213-808-5760

Hilary Bonaccorsi (*pro hac vice*)
One International Place, 40th Floor
100 Oliver Street
Boston, MA 02110
Telephone: 617-728-7153
Fax: 617-426-6567

Tharuni Jayaraman (*pro hac vice*)
1900 K Street NW
Washington, DC 20006
Telephone: 202-261-3420
Fax: 202-261-3333

/s/ *John Powers*
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW**
Ezra Rosenberg (*pro hac vice*)
John Powers (*pro hac vice*)
Ryan Snow (*pro hac vice*)
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue, N.W., Suite 400
Washington, D.C. 20005
(202) 662-8336
erosenberg@lawyerscommittee.org
jpowers@lawyerscommittee.org
rsnow@lawyerscommittee.org

**LATINOJUSTICE PRLDEF**
Jackson Chin
LatinoJustice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 739-7572
jchin@latinojustice.org

*Attorneys for Plaintiff*
*Common Cause/New York*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2019 a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Neil A. Steiner*

Neil A. Steiner
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036-6797
neil.steiner@dechert.com